JAMES M. BRANDON V. GULF CITY COTTON PRESS AND MANU- FACTURING CO.

1. PRACTICE—CONTRIBUTORY NEGLIGENCE.—As a general rule, the question of negligence is one of fact for the jury; and where the issue is upon contributory negligence by plaintiff, it would be error to withdraw such question from the jury.
2. CONTRIBUTORY NEGLIGENCE.—It is the duty of one who seeks re- dress for another's wrong, to use due diligence to prevent loss thereby. This principle applies to a breach of contract, and a party is not entitled to compensation for consequences of a breach when he had opportunity to prevent them.
3. DAMAGES—PROXIMATE CAUSE.—The intervention of the independ- ent act of a third person between the wrong complained of and the injury, and which act was the immediate cause of the injury, is made a test of that remoteness of damages which forbids recovery.

4. DAMAGES—PRACTICE.—Although the question of contributory negligence proper is one of fact for the consideration of the jury, under proper instructions, yet the question of the remoteness of damage is one of law to be decided by the court.

5. DAMAGES.—See case for facts which did not authorize a recovery for damage subsequently developed, which had as its primary origin the wet condition of cotton when delivered for shipment.

APPEAL from Galveston. Tried below before the Hon. William H. Stewart.

James M. Brandon sued appellee for damage by rain-water to a lot of three hundred and twenty bales of cotton, charging that the same was stored with the defendant at Galveston as warehouseman, and damage occasioned by its negligence. The damage was alleged generally at $3,000; and specially, that in the month of January, 1875, plaintiff purchased the cotton, then stored with defendant, and in good order, for shipment to New York; that about a week after that it was shipped to New York by the steamship *Clyde,* for sale on arrival; that, owing to water-damage received while in defendant's possession, at the time of arrival in New York, about 1st of February, in ordinary course, the cotton was frozen and unmarketable; that during necessary delay in preparing it for market he lost by depreciation in price $763.18, and was forced to sell twenty-three bales as pickings, at a loss of $808.13; and by loss in weight, $357.72; and by extra costs and charges, $364.86. That the undertaking of the company was to keep the cotton, prepare it for shipment, and deliver it on the wharves in Galveston to the steamship company for shipment; and in and about the keeping, preparation, and delivery, to exercise due and ordinary care and diligence, and especially to protect it from rain-water; that said loss and damage were occasioned by its failure so to do.

Defendant pleaded, by answer: (1.) General denial. (2.) That the cotton was not damaged while in its possession, but was delivered by it to plaintiff in good order and he receipted

it without objection. (3.) That it was raining when the plaintiff ordered the cotton to be compressed and delivered to steamship; that he specially directed that no regard should be had to weather; that defendant, without such special instructions, would not have turned out the cotton for shipment; that it received water-damage only by defendant acting pursuant to plaintiff's instructions. (4.) Plaintiff was present during the compressing and shipping of the cotton and knew its condition; that had he objected, the cotton would not have been shipped, but kept in the press, dried out, and all damage prevented; that, besides the damage the cotton sustained by shipment to New York on account of the weather, there were no facilities in New York for properly caring for cotton damaged by water, and it continued to damage after arrival there.

On the trial, the evidence showed losses on cotton under the various heads, for which damages were claimed, by reason of its then damaged condition, when received by Moody & Jemison in New York.

There was no conflict of evidence as to plaintiff being informed by the steamship company in Galveston that the cotton was too wet for them to give a bill of lading for it as in good order, and that he obtained the bill of lading by telling the agent of the company that he would not look to his company, but would claim from the appellee any damages the cotton might sustain.

There was conflict of evidence between the superintendent of appellee's warehouse and the appellant, as to whether or not said superintendent was told, when the cotton was delivered to appellant, that it was in bad order and that the press would be looked to for damages.

The evidence sustains the answer as to Moody & Jemison having advanced cost price of the cotton and not having been paid the same, and that they are not looking to the appellant for the losses on the cotton, but are suing the steamship company. The evidence shows the advantages of

facilities of Galveston and appellee over any in New York for drying and re-baling wet cotton.

The evidence was conflicting as to whether or not the cotton was wet while in warehouse, or by being delivered in the rain.

The court charged, in substance, that appellee was liable for damage to the cotton while in warehouse, and also while going to the ship, unless plaintiff ordered it to be sent to the ship rain or shine. And that if the plaintiff did not know. before the bill of lading was executed that the cotton was wet, then plaintiff could recover also the damages the cotton received after it left Galveston.

Verdict and judgment for defendant. Plaintiff appealed.

*R. G. Street*, for appellant.

I. The court instructed the jury that plaintiff was not entitled to recover damage accruing after the ship left Galveston and while *en route* for New York, if he knew the wet condition of the cotton before he received bill of lading for it.

Our proposition is, that whether the receipt of bills of lading for the cotton by the plaintiff, and allowing it to go forward to New York knowing it to be wet, constitute contributory negligence or not, is a question of fact for the jury.

There was evidence tending to sustain all of the plaintiff's allegations, and the plaintiff admitted that he knew the wet condition of the cotton at the time he received bills of lading.

There was evidence tending to show that the plaintiff only became aware of the cotton being wet after the press had delivered it on the wharf to the ship, and that he then complained to the vice-president and to the superintendent of the company about the wet condition of the cotton; that the latter replied, "he knew the cotton was wet, but that the press would rectify it." There was also evidence tending to show that wet cotton generally improves—dries out—on the trip from Galveston to New York. (Paschal's Dig., sec.

1464; Texas and Pacific Railroad Co. v. Murphy, 46 Tex., 356, and authorities there cited.)

II. Plaintiff is entitled to recover for all loss the natural and proximate result of damage to the cotton while in defendant's possession, if such damage arose solely from the want of ordinary care on the part of the defendant. And if the defendant knew of the damage, and also that the cotton was in course of shipment to New York, then the loss, while in transit to New York, if accruing solely from effects of cold weather on the damage arising from neglect, for which defendant is answerable, may be recovered, where, as in this action, it is specially alleged.

There was evidence tending to show that the cotton was stored with defendant in good order; that the same became wet with rain while in defendant's possession; that plaintiff first became aware of the wet condition of the cotton after it had been delivered by defendant on the wharf, at Galveston, to the steamship. Of this the plaintiff complained, at the time, to the vice-president and to the superintendent of the defendant company, and was told by the latter, "he knew it was wet, but that they would rectify it"; that the specific loss set out in the petition (except profits) was sustained, and that the same was produced solely by cold weather operating upon the wet cotton *en route* by steamship to New York. (Travis v. Duffau, 20 Tex., 57; Calvit v. McFadden, 13 Tex., 327; Moore v. Anderson, 30 Tex., 229; Durst v. Swift, 11 Tex., 281; Gee v. L. & Y. R. R. Co., 6 H. & N., 211; Wilson v. L. & Y. R. R. Co., 9 C. B., (N. S.,) 632; 2 Greenl. Ev., secs. 256, 268; Dickinson v. Boyle, 17 Pick., 78; Vicars v. Wilcox, 2 Smith's Lead. Cas., 531; Knight v. Gibbs, 1 A. & E., 43, 112, 113; Sedg. on Dam., secs. 67, 79, 80, 82, 86, 87.)

*Mann & Baker*, for appellee.

I. Injury by freezing, and loss of profits by delay incident thereto, cannot be reasonably supposed to have been contem-

plated by the parties, at the time of their contract, as incident to and caused by a breach by the cotton getting wet in the warehouse. (13 Tex., 324; 25 Tex. Supp., 188.)

II. It was the duty of appellant, when notified by the carrier that the cotton was so wet that the steamer would not be responsible for it, to have taken steps to prevent the wet cotton from damaging; and if appellant failed to do so, the after damages are too remote to be recovered.

The charge of the court below, that the damage that accrued after appellant shipped, knowing that it was wet, was too remote for recovery, is the correct rule. (Whart. on Neg., sec. 137 and note; 6 Sedg. on Dam., p. 106 and note; Loker *v.* Damon, 17 Pick., 284; Milton *v.* Hudson River Steamboat Co., 37 N. Y., 210; Hamilton *v.* McPherson, 28 N. Y., (1 Tiff.,) 76.)

III. Appellant's allegations of "having been damaged" to the extent of deterioration in quality and weight, and "had paid" the amount of expenses for putting cotton in order, are not sustained by the proof, but, on the contrary, evidence sustains appellee's special answer showing that Moody & Jemison had lost the deterioration and paid these expenses. (Moore *v.* Anderson, 30 Tex., 224; Hoggland *v.* Cothren, 25 Tex., 346; Edw. on Bail., 2d ed., secs. 362, 584; Sedg. on Dam., 6th ed., p. 273 and note; Ward *v.* Haws, 5 Minn., 440; Burt *v.* Dewey, 40 N. Y., 283; Pierce *v.* Benjamin, 14 Pick., 360; Higgins *v.* Whitney, 24 Wend., 379.)

BONNER, ASSOCIATE JUSTICE. — The court in this case submitted to the jury the question of the liability of the defendant for damages to the cotton while in its possession and on the way to the steamer *Clyde* for shipment. The jury having found a general verdict for the defendant, and there being no alleged error in the proceedings up to this point, the presumption must be indulged, that at the time the cotton was thus placed upon the wharf, no such damage had accrued as would entitle the plaintiff to a judgment.

Plaintiff's case seems to proceed upon the theory that he is entitled to recover for damage subsequently developed, which had as its primary origin the wet condition of the cotton when delivered upon the wharf. Upon this subsequently devel·oped damage, is based his alleged special damage, for which he seeks recovery. The action of the court in the charge upon this issue as given, and in the refusal to give the special charges asked, is assigned as error, and the determination of this question is decisive of the case.

The jury were virtually instructed by the court that the plaintiff's right to recover depended upon the question of his knowledge or ignorance of this wet condition of the cotton at the time he received and shipped it. It is contended by the plaintiff that whether his shipment of the cotton, under the circumstances as developed by the testimony, caused the damage, was a question of contributory negligence, which should have been left to the jury; and that by the charge of the court it was virtually taken from them.

If this had been a question purely of contributory negligence, we think there would have been error in not submitting it as a question of fact for determination by the jury; as, under the decision of this court, the question of negligence, as a general rule, is one of fact, to be submitted, by appropriate instructions, for their consideration. (Texas and Pacific Railroad Co. v. Murphy, 46 Tex., 356.) This is the rule also deduced by Mr. Cooley, as supported by a great majority of the cases. (Cooley on Torts, 670.)

The testimony of the plaintiff himself, however, shows that he had full knowledge of the condition of the cotton before the bill of lading was signed, and that in fact he only received a clean bill of lading by reason of his urgent solicitation and as a matter of personal favor. It was further in evidence, that the immediate cause of the injury was the continued freezing and thawing of the cotton after it had been shipped by the plaintiff from Galveston and had reached the city of New York.

The question, then, arises: Was the plaintiff, under the circumstances as developed by the testimony, entitled to recover for subsequently-accrued damage, after he had received the cotton and had exercised an independent control over it, with full knowledge of its condition and liability to injury?

It is well settled, that it is not only the moral but the legal duty of one who seeks redress for another's wrong to use due diligence to prevent loss thereby. The principle applies to a breach of contract, and a party is not entitled to compensation for injurious consequences from such breach, so far as he had the information, time, and opportunity necessary to prevent them. (Sedg. on Dam., marg. p. 94, and authorities cited.)

It is a familiar general rule, that damages, to be recovered, must be both the natural and proximate consequences of the act complained of. But, as said by Mr. Sedgwick, it is far easier to lay down this general proposition than to apply it to a particular case. When we come to analyze causes and effects, and undertake to decide what is the natural result of a given act, and what is to be regarded as immaterial,—what is proximate and what remote,—we shall find ourselves involved in serious difficulty. (Sedg. on Dam., 66.)

This very difficulty, however, has forced us to adopt general rules, arbitrary though some of them may be, limiting this liability. As said by Lord Bacon: "It were infinite for the law to consider the cause of causes, and their impulsion one upon another; therefore it contenteth itself with the immediate cause and judgeth of acts by that, without looking to any further degree." (Bac. Max. Reg., 1.)

In the elaborate and well-considered case of Cuff, Administratrix, *v.* Newark and New York R. R. Co., 35 N. J., (6 Vroom,) 32, it is said, and many authorities cited to sustain the proposition, that the intervention of the independent act of a third person between the wrong complained of and the injury sustained, and which act was the immediate cause of

the injury, is made a test of that remoteness of damage which forbids its recovery.

In the recent work of Mr. Wharton on Negligence, the question, that it is a bar to the plaintiff's right of recovery if he break the causal connection between the injury received by himself and the defendant's negligence, is fully considered and approved in chapters 3 and 9 and authorities cited in notes.

If the independent act of a third person would break this connection and relieve the defendant from liability, it is believed that the principle should apply with equal, if not greater force, where this interruption is made by the plaintiff himself with full knowledge of the facts.

Although the question of contributory negligence proper is one of fact for the consideration of the jury, under appropriate instructions, yet the question of remoteness of damage is one of law to be decided by the court.

It is well settled, that the charge of the court should have reference to the issues made by the pleadings and the evidence.

Tested by the above rules of law, in their application to the undisputed facts of this case, we do not think there was error in the general charge of the court, or in the refusal of the special charges asked, and the judgment is affirmed.

AFFIRMED.