THE NAVARRO PUBLISHING COMPANY AND ST. LOUIS TYPE FOUNDRY COMPANY v. J. W. FISHBURN, L. K. TARVER AND G. P. MILLER.

(No. 4191.)

RESCISSION OF CONTRACT.— A contract cannot, ordinarily, be rescinded unless both parties can be reinstated in their original situation in respect of the contract, and the party desiring to re-

scind the contract must do or offer to do all in his power to re-
store the other party to his original situation to entitle him to
recover his damages.

FRAUD.— The fraud which is the ground for relief against a con-
tract is fraud at the time of the execution of the contract; and
a contract, though induced by fraud, cannot be avoided if the
rights of an innocent vendee have, in the meantime, intervened.

APPEAL from Navarro county.   Opinion by WALKER, J.

STATEMENT.— The briefs of counsel on both sides being
under the "New Rules," and the statement of the case
made by the counsel for the appellants being agreed to as
correct by the counsel for the appellee, we shall adopt such
statement as the same has been presented in the appel-
lants' brief, and it is as follows:

The appellants brought suit in the district court of Na-
varro county on the —— day of ——, A. D. ——, against
appellees to annul a contract made on October 13, 1876,
by and between the Navarro Publishing Company and
J. W. Fishburn, by virtue of which contract Fishburn got
possession of the paper published by the Navarro Publish-
ing Company, with its press and material, type, etc.; also
for the recovery of a job press, with its type and material,
which was delivered to the said Fishburn by the Navarro
Publishing Company under said contract, that the same
might be sold for the benefit of the St. Louis Type Foundry,
from whom the said press had been purchased by the Na-
varro Publishing Company and not paid for.   Or in case
this relief is not granted, then plaintiffs pray for a judg-
ment for the sum of $2,000 against Fishburn, being the
value of and the amount agreed to be paid by Fishburn for
the Corsicana Index, job press, material, etc.

The contract is sought to be annulled on the ground of
fraud on the part of Fishburn in inducing the contract, as
well as his fraudulent acts in wilfully destroying the value
of the security given by him to secure the purchase money
of paper, press, etc., and the payment of the indebtedness
to the St. Louis Type Foundry Company.

Tarver & Miller, the defendants, are purchasers from Fishburn with notice.

A general demurrer was filed to the petition by defendants, which was sustained by the court, whereupon plaintiffs declined to amend and judgment was entered for defendants, to which plaintiffs excepted and gave notice of appeal.

The petition alleged that on the 13th of May, 1876, the Navarro Publishing Company were the owners and publishers of a certain newspaper in Navarro county, known and styled as the Corsicana Weekly Index, which said paper was published weekly, having a wide circulation in Navarro county and surrounding counties; also with a paying subscription list and advertising patronage of the value of $200 per month; that the Navarro Publishing Company purchased from the St. Louis Type Foundry Company, on or about the 1st day of April, A. D. 1876, the job press, with type and material, for which the Navarro Publishing Company agreed to pay the sum of $775.25; that about the 13th day of October, 1876, while the Navarro Publishing Company was still indebted to the St. Louis Type Foundry in the aforesaid sum of money, the said Navarro Publishing Company received from defendant Fishburn a proposition to purchase the Corsicana Weekly Index, with its job press, type, material, properties, etc.; that the Navarro Publishing Company, earnestly desiring to obtain the means of paying the St. Louis Type Foundry Company, or to provide a security for its payment, and having fully informed the said Fishburn of the indebtedness as aforesaid, and their desire to pay or secure the same, did enter into a contract with Fishburn, in which Fishburn agreed to purchase the newspaper, job press, etc., for the sum of $2,000; that the said Fishburn, having no money to pay cash, agreed to execute certain instruments in writing, each for the sum of $50, payable one-half in twelve months and the other half in twenty-four months from date, payable to the Navarro Publishing Company or bearer. The bearer was

entitled to have one-half of his account in advertising, job printing, etc., credited upon the note or instrument until paid.

That the Navarro Publishing Company was to receive a sufficient number of these instruments to aggregate the sum of $2,000; that the said Fishburn agreed to guaranty their negotiability and ready sale by so conducting the paper as to extend its influence as an advertising medium as to create a demand for these advertising notes among all classes who desired to advertise; that by his conduct of the paper the Navarro Publishing Company could easily sell the paper or advertising notes and raise the money to pay the St. Louis Type Foundry Company; that the Navarro Publishing Company, induced and relying upon the promises of said Fishburn, agreed to accept forty of said written instruments, payable as aforesaid, and did accept them and delivered to said Fishburn the Corsicana Weekly Index, with the job press, type and material of all kinds pertaining thereto; that the Corsicana Index, or rather the Navarro Publishing Company, delivered twenty of said instruments to the St. Louis Type Foundry Company for sale, to secure and discharge the indebtedness as aforesaid, and the Navarro Publishing Company retained the balance. The petition alleges that these written instruments given by the said Fishburn were at once placed on the market by plaintiffs as contemplated by all parties to the contract, and the said written instruments or advertising notes could not be disposed of for any sum of money whatever. The petition alleges that the failure to sell said notes arose from the failure of Fishburn in any manner to carry out his contract in the conduct of the paper, or to perform any of the many promises set out in the petition; but, on the contrary, he allowed the newspaper to depreciate in credit, to wit: The Corsicana Weekly Index, and its influence as an advertising medium, to be destroyed; that no one would advertise in said Corsicana Weekly Index but those merchants who furnished said Fishburn

and his employees with supplies, and only in payment of merchandise so obtained.

The petition further alleges that the said Fishburn, contrary to his promises, did wilfully and fraudulently destroy the negotiability and sale of said advertising notes, by representing on the streets of Corsicana that parties desiring to advertise in his paper could make better terms by direct application to him than could be obtained by purchasing said notes. That these fraudulent representations and the failure of Fishburn to fulfill any of the promises by him made to induce said contract, rendered said advertising notes absolutely valueless in the hands of plaintiffs. That the said Fishburn has obtained the property of plaintiffs without consideration, and held the same until 1878, when he sold the Corsicana Weekly Index, with the job press, type and material, to his co-defendants, Miller & Tarver, who, it is alleged, purchased with notice of all equities, etc. The relief prayed for is set forth above in statement of the case.

Plaintiffs assign errors as follows:

1. The court erred in sustaining defendants' general demurrer to plaintiffs' petition.

2. The court erred in holding that parol evidence was inadmissible to show the circumstances, inducements and objects with which the contract of purchase was made.

OPINION.— The plaintiffs, in their petition, disclose no privity of contract with the defendant, nor any joint cause of action to enforce the remedy which the petition seeks. Whatever cause of complaint exists to rescind the contract pertains to "The Navarro Publishing Company." The contract, according to the allegations of the petition, was for the sale of a certain newspaper and materials connected with it, which belonged to, and was the property of, "The Navarro Publishing Company," which it sold and delivered to the defendant for the negotiable securities described in the petition, which were delivered to the Publishing Company in pursuance of their agreement. The St. Louis Type

Foundry Company had no connection whatever with the contract, the making nor the consummation thereof, nor did it have any rights or ownership in the subject-matter of the contract between the parties which entitled such company to the enforcement or the cancellation of the contract so made between the parties. The St. Louis Type Foundry Company was not, in any sense, either a party or a privy to that contract. The petition alleges no facts connecting the Type Foundry Company further with this cause of action than that the Navarro Publishing Company was indebted to it, and that one-half of the proceeds of the consideration agreed by defendant to be paid the Publishing Company, and which were paid by defendant in the purchase of the newspaper and materials, was turned over or delivered to the Type Foundry Company in order to enable the Publishing Company to pay its aforesaid debt. These facts do not give to the St. Louis company any right or cause of action to recover the property sued for, nor to cause a rescission of a contract to which he was neither a party, nor for the performance of which he was in anywise connected or obligated, nor to the benefits of which he was in anywise directly interested. The misjoinder of parties plaintiff is apparent on the face of the petition, and the defect was reached by an exception. May v. Slade, 24 Tex., 208; Murray v. Webster, 5 N. H., 391.

If, however, this objection to the petition was removed and it was treated as the suit alone of the Navarro Publishing Company, obviously it must be held that the demurrer was properly sustained.

The petition sets forth, in effect, but two grounds for rescission, one of which is the failure, as alleged, of the defendant to manage his newspaper so as to render the securities given to defendant available in the market, or of any value to the holders of them, thereby committing a breach of his express stipulation and guaranty; he does not allege that this failure on his part was fraudulent. The other ground is, in effect, that he fraudulently sought to

render them less valuable by offering inducements to the public to advertise with him in his newspaper at lower rates than could be secured by virtue of said negotiable securities; that both these causes combined had the effect to render the securities valueless and destroyed their negotiability.

No fraud nor misrepresentation is alleged against the defendant in the making of the contract; whatever cause of complaint is alleged to exist concerning it appears to have arisen subsequently, very long subsequently, and after the contract had been mutually acted upon with apparent satisfaction from aught that is shown in the petition, and acquiesced in for two years, more or less.

"The fraud which is the ground for relief against a contract is fraud at the time of the execution of the instrument." Chesterman v. Gardner, 5 Johns. Ch., 29. If, however, the facts alleged in regard to the making of the contract could, by possibility, be construed to imply a charge of fraud on the defendant in the making of it, the knowledge of the fraud was not concealed by the defendant for two years, so as to account for and excuse the plaintiff's delay and apparent acquiescence in it. "Acquiescence or delay for a length of time after a man is in a situation to enforce a right, and with a full knowledge of facts, is, in equity, cogent evidence of a waiver and abandonment of the right. If a voidable contract or other transaction is voluntarily acted on, with a knowledge of all the facts, in the hope that it may turn out to the advantage of a party who might have avoided it, he may not avoid it when, after abiding that event, it has turned out to his disadvantage." Kerr on Fraud and Mistake, 299, and authorities cited. But the plaintiff, indeed, does not pretend that there was any fraud in the making of the contract, nor any concealment by defendant of fraud alleged to have been subsequently discovered. The case which is made by plaintiff not only negatives the existence of fraud in the making of the contract, but the allegations of the petition create a strong

38

implication of acquiescence therein, if there had been any. The petition certainly alleges no fraudulent act of omission or commission against the defendant in respect to the contract, except acts which would constitute, at most, but a breach of the conditions and stipulations of the contract.

The facts alleged in the petition otherwise negative, very conclusively, the plaintiff's right to rescind this contract. The plaintiff does not allege that, before instituting his suit, he ever made an offer to the defendant to rescind, and the plaintiff shows, *prima facie*, its inability to restore the defendant to the position in which he was at the time of making the contract. The plaintiff obtained from him negotiable personal obligations which he shows have been, to a large extent, placed in the hands of other persons, and it neither accounts for the others nor is there an offer to surrender them to defendant and cause them to be canceled. The property sold to defendant has been, in the meanwhile, sold by defendant to other parties. "A contract cannot, ordinarily, be rescinded unless both parties can be reinstated in their original situation in respect to the contract, and if one party has already received benefit from the contract he cannot rescind it wholly, but is put to his action for damages, or he may set up the default of the other party to perform his part of the contract as a defense *pro tanto*." Story on Contracts, sec. 977. "But where the party desiring to rescind a contract has been defrauded, and it is impossible for him to reinstate the other party in precisely the same condition, it will be sufficient if he do or offer to do all that is in his power in this respect, in order to entitle him to recover his damages." Id. The plaintiffs, in their petition, show that the defendant delivered his obligations to the number of forty, payable to bearer, and intended, by the understanding of the parties, to have free negotiability, payable at twelve and twenty-four months, in sums of $50 each, and, as has been already said, one-half of them had been delivered to the St. Louis Type Foundry Co. for negotiation, and the plaintiffs neither offer to return and

cancel them, nor do they allege what has been done with them, nor in whose hands they now are, nor to whom they or any of them now belong. The defendant, *prima facie*, is liable for their payment in the hands of *bona fide* holders for value, and he cannot be placed in the condition in which he is entitled to be placed in respect to the subject-matter of this contract under the rescission which is asked to be made of it.

The printing material and newspaper sold to defendant has been sold by him to parties who are made co-defendants, under allegations against them " that they bought with full notice of the facts as set forth in the petition, and of the contract with said Fishburn, and his failure to perform it," and that " they knew that a suit was being brought for said paper." These allegations do not place the purchasers in a position which disable them to have acquired a valid title to the property. A knowledge of facts which did not entitle the plaintiff to rescind the contract of course would not affect the right of those parties to purchase the property; but aside from this axiomatic proposition, it is not to be maintained that the free alienation of property is to be thus restrained. In the absence of fraud in the transaction they had a right to purchase property, the apparent ownership of which the Navarro Publishing Company had invested in the defendant by all the required *indicia* of a valid title, accompanied by possession long enough, perhaps, to have even conferred title under the laws of limitation. With a knowledge of all the facts which the plaintiffs charge against the defendant, third parties could not know that the plaintiff, the Navarro Publishing Company, would elect a remedy for rescission of the contract, rather than that of damages for breach of the contract, and after so long a period of delay, certainly, and of acquiescence, seemingly, a purchaser might well be regarded as such in good faith who bought and paid for the property under such circumstances. It is not alleged that this suit was then pending, but merely that the purchasers " knew that suit was

being brought for the paper." The doctrine of *lis pendens* rests upon the existence of the open facts of record which disclose to the world, and which third parties are conclusively required to take notice of, what claims are made by the suit. Until the suit is brought for the paper the world will not be required to anticipate, at its peril, and be bound by constructive notice of the contents of an embryo petition having its existence only in the brain of legal counsel, as to whether the suit for the paper will be developed, when matured in the shape of a judicial demand, into a suit for cancellation of the contract set forth in the petition or not. Such charges are, by far, too indefinite and vague, at best, if they were not otherwise insufficient, whereby to restrict the right of these purchasers to acquire, by a fair and honest purchase, without fraud, the property in question.

The correct principles of law applicable to the subject are succinctly and clearly stated by Kerr thus: " Nor can a contract be rescinded if the circumstances have, in the meantime, so far changed that the parties cannot be restored to the position in which they stood before or at the time of the contract. The effect of the avoidance of an agreement on the ground of fraud is to place the parties in the same position as if it had never been made; and all rights which are transferred or created by the agreement are revested or discharged by the avoidance. If, when it is avoided, nothing has occurred to alter the position of affairs, the rights and remedies of the parties are the same as if it had been void from the beginning; but if any alteration has taken place, their rights and remedies are subject to the effect of that alteration. A contract, though induced by fraud, cannot be avoided if the rights of an innocent vendee have, in the meantime, intervened. If, before disaffirmance, the goods or chattels have been resold or transferred, either in whole or in part, to an innocent vendee, the title of such vendee is good against the original vendor. So, also, where a negotiable instrument gives a valid title

to a transferee who takes it without notice of the fraud." Kerr on Fraud and Mistake, p. 329. The application of these principles of law withdraw the question presented by this appeal from the region of doubt. Indeed, the petition seems to be wanting in the statement of any substantial ground for relief.

AFFIRMED.