## HAUBELT BROTHERS v. JULES HIRSCH.

### Decided October 12, 1910.

**Tort—Levy of Execution—Damages—Liability of Plaintiff.**

Plaintiffs in execution caused a constable to levy upon and sell a house situated upon the land of a third party, claiming that the house was the property of the defendant in execution; the house was purchased at the constable's sale by S. who afterwards conveyed his right thereto, by virtue of the constable's sale, to L. who, without the knowledge or connivance of the plaintiffs in execution, tore down the house and removed it from the land of the owner; the plaintiffs in execution received and appropriated the money collected by the constable from the sale of the house. Held, the damage to the owner of the house having resulted from the tearing down and removing the same and not from the mere levy and sale thereof, and no causal connection being shown between the acts of causing the levy and sale, and the tearing down of the house, the plaintiffs in execution were not liable to the owner of the house for the damage.

Error from the Eleventh Judicial District, Harris County. Tried below before Hon. Chas. E. Ashe.

*Masterson & Masterson* and *H. N. Atkinson,* for plaintiffs in error.—Where a party purchases land or other property at execution sale and afterwards sells it, he is not liable for damages to the land caused by his vendee, unless it appears that he acted in concert with his vendee in the injury to the property. McClanahan v. Stephens, 67 Texas, 354; Brandon v. Gulf City Cotton P. & Mfg. Co., 51 Texas, 121; Galveston, H. & S. A. Ry. Co. v. Sweeney, 6 Texas Civ. App., 173; Texas & P. Ry. Co. v. Doherty, 15 S. W., 44.

*R. H. Holland* and *K. C. Barkley,* for defendant in error.—If an execution creditor advises, directs or assists in the commission of the unlawful levy, or receives or retains the proceeds thereof, he is equally liable with the officer for the damage sustained by the owner of the property. 17 Cyc., 1752; McKay v. Irion, 15 S. W., 123-4; Northern Texas Trac. Co. v. Caldwell, 44 Texas Civ. App., 374; Galveston, H. & S. A. Ry. Co. v. Nass, 94 Texas, 255; Torrey v. Schneider, 74 Texas, 116; St. Louis S. W. Ry. Co. v. Black, 49 Texas Civ. App., 390; Markham v. Houston Direct Nav. Co., 73 Texas, 247; Sayles' Annotated Texas Civ. Stats., arts. 2360, 2370; White v. Stribling, 71 Texas, 109.

NEILL, ASSOCIATE JUSTICE.—Jules Hirsch is, and was on December 20, 1905, the owner of a certain tract of land in Harris County, Texas, on which was situated a certain two-story house of which he was then also the owner and in constructive possession. On or about said date Haubelt Bros., a firm composed of Ed. and Frank Haubelt, placed in the hands of Will S. Humble, a constable of said county, an execution issued on a judgment recovered by them in the justice's court of Harris County against H. H. Moore for the sum of $46.75. The con-

stable levied the execution on the house above referred to and advertised the same as the property of the defendant in execution, reciting in the advertisement that the building was situated on the property of Jules Hirsch. By virtue of said execution, and in pursuance of the advertisement, the building was sold on January 27, 1906, by the constable at the place where it was situated, and bid in by Andy Sayers for the sum of $60. The amount of the bid being paid by the purchaser and received by Haubelt Bros., a bill of sale was executed by said constable to Sayers. Ed Haubelt of the firm of Haubelt Bros., as well as Herman Voss, its agent, was present when the sale was made, and though the constable and all persons present were notified at the time by an agent of Hirsch that the house was not Moore's, but the property of Hirsch, and that whoever purchased it at the sale would get no title but only a law suit, Ed Haubelt and Voss encouraged and induced the constable to make the sale and induced Sayers to buy, Haubelt saying that he would guarantee the title to the property to the purchaser. Some months after the sale the house was torn down and moved off of Hirsch's premises and its value was lost to him.

Upon these facts Jules Hirsch instituted suit against Ed. and Frank Haubelt, Andy Sayers and the sureties on the official bond of W. S. Humble as constable, he having died before the suit was brought, to recover damages for the loss of said building.

In connection with the averment substantially of the facts above recited, he alleged in his petition that, "Ed. and Frank Haubelt, and each of them individually, and the said Andy Sayers, all and each of them, well knew that said house was situated and standing on the land of plaintiff and belonged to him, but notwithstanding such knowledge they acted in collusion and illegally, maliciously and negligently deprived plaintiff of the house . . . and value of the same and the rents accruing therefrom." Actual damages in the sum of $800, for the value of the house and for loss of rents for twenty months at the rate of $50 per month, as well as exemplary damages in the sum of $1000, were prayed for.

The answer of Haubelt Bros. admitted that they had a judgment and execution against H. H. Moore, that the constable levied said execution on the house in question, but without their direction, that it was sold thereunder and struck off to their co-defendant, Andy Sayers; and averred that if the house was torn down and carried away by any one, they had nothing to do with it.

Andy Sayers, after interposing a general denial, admitted in his answer that he purchased the house at the alleged execution sale, but averred that he never took possession thereof, and that thereafter, on March 18, 1906, he conveyed his claim thereto to one James Lyles.

The sureties on the constable's bond interposed a general demurrer to plaintiff's petition, which being sustained, the case as to the other defendants was tried before a jury which resulted in a judgment in favor of the plaintiff against Haubelt Bros., for $200 with interest from

the time the house was torn down to date of trial, amounting to $32. The jury also returned a verdict in favor of Andy Sayers against the plaintiff.

From the judgment against them the Haubelt Bros. sued out and prosecute this writ of error.

The plaintiff has filed no cross-assignment of error, nor has he filed any brief in this court. Therefore, the case will be considered on the brief filed by the defendants Haubelt Bros., and only as between them and the plaintiff.

The evidence showed that the house in question was torn down and carried off by one James Lyles, to whom the defendant Sayers had sold his claim thereto after his purchase at execution sale. The evidence wholly fails to show the Haubelts, or either of them, advised, encouraged or in any way abetted Lyles in tearing down and carrying off the plaintiff's house, or that they even knew or contemplated that such acts would be done by him. In fact there is nothing to indicate either of them knew that Andy Sayers had sold the house to Lyles or that it had been torn down and removed, until this suit was brought.

The refusal of the court to instruct the jury, at Haubelt Brothers' request, that, if the house was torn down and removed by Lyles, and that if they did not advise or encourage him in doing so, to find a verdict for them, as well as its action in instructing them in its main charge that if Haubelt Brothers directed the levy and sale under the execution against Moore, or that if they did not direct the levy, but acquiesced in and adopted the same after it was made by the constable and received the proceeds of the sale knowing it was the property of plaintiff, and that if Andy Sayers sold the property to Lyles who tore down and moved it away, to find in favor of plaintiff against Haubelt Brothers for the reasonable value of the house at the time it was torn down and taken away, with interest on such value from the time it was torn down and taken away, is assigned as error.

When several persons unite in an act which constitutes a wrong to another, intending at the time to commit it, or in doing it under circumstances which fairly charge them with intending the consequences which follow, the law compels each to assume and bear the responsibility of the misconduct of all. (Cooley on Torts [3rd ed.], 223.) In such an event the injured party may sue all or any number of persons chargeable with the wrong. And if he sue one or more it is no defense that others are not brought in to share the responsibility. The plaintiff can do just as he pleases about this, and it is none of the defendant's business whether he sues one or all the wrongdoers.

In this case the constable, who levied upon and sold the property of the plaintiff under an execution against another, did an actionable wrong; and Haubelt Brothers, in being present and encouraging the sale, as well as Sayers who purchased, knowing it was plaintiff's property, joined him in the wrong and made and lay themselves liable for any injury ensuing or which might proximately flow from such levy

and sale. But no damage was sought, nor claimed by plaintiff, for the levy and sale alone, nor was any actual damage proved therefor. Such damages were merely nominal. For no actual injury was done to the property in making the sale, and no damages alleged or asked on that account. It was the tearing down and removing the building which caused the damage and for which the damages were recovered, as is apparent from the pleadings, the evidence, the court's charge and the verdict of the jury. It is clearly shown by the evidence that Haubelt Brothers had nothing whatever to do with these damageable acts, but that they were done by Lyles alone without their knowledge or connivance. The question then is, did their acts in encouraging and ratifying the sale by the constable make them parties to the acts of Lyles which did the damage, and render them liable as joint tort-feasors with him for his wrongful acts which caused the damage? Unless an affirmative answer can be given this question, we can see no escape for plaintiff from the force of the assignments of error above mentioned.

It seems to us that some causal connection between the acts of Haubelt Brothers and of Lyles must appear before the former can be held liable for the acts of the latter. In other words, the acts of Haubelt Brothers must be the proximate cause of Lyles' tearing down and removing plaintiff's house. Their wrong must have been such that the damage done by Lyles must have followed from it as the natural and usual sequence. If, as has been aptly said, the wrong and the resultant damage are known by common experience to be natural and usual in sequence, and the damage does not, according to the ordinary course of events, follow from the wrong, then the wrong and damage are not sufficiently conjoined or connected as cause and effect to support the action. If the original wrong only becomes injurious in consequence of the intervention of some distinct wrongful act or omission by another, the injury shall be imputed to the last wrong as the proximate cause, and not to that which was more remote. Cooley on Torts, 99-104; Currier v. McKee, 99 Me., 364, 59 Atl., 442; Brandon v. Gulf City C. P. & Mfg. Co., 51 Texas, 121.

Therefore, as we have seen from the evidence, no substantial injury resulted from the acts of Haubelt Brothers in encouraging and ratifying the constable's sale, and as there was no causal connection between the acts of Lyles in tearing down and removing the house—the only damage alleged or proved—and the acts of Haubelts, we must hold that the court erred in refusing the special charge requested by said defendants, as well as in its charge above mentioned.

This leads us to the assignment which complains of the court's refusing to peremptorily instruct the jury, at the instance of Haubelt Bros., to return a verdict in their favor. In our opinion the trial court erred in refusing the request. For, if we are correct in what we have said in disposing of the other two assignments, the defendants Haubelts were in no way responsible or liable for the acts of Lyles in tearing down

and removing plaintiff's building, from which ensued the only damage averred or proved.

In our view of the case, it having been fully developed on the trial in the court below, we can see no reason for remanding this case for another trial, but deem it our duty to reverse the judgment against plaintiffs in error, and here render judgment in their favor, which is accordingly done.

As no complaint is made of the judgment in favor of the other defendants, that part of it is affirmed.

*Affirmed in part and reversed and rendered in part.*

Writ of error refused to Hirsch.