MARKHAM IRR. CO. v. BROWN.   (No. 754—4712.) *

Commission of Appeals of Texas, Section B. March 30, 1927.

1. **Appeal and error** ⬅362(1)—**Supreme Court will not consider exceptions to petition not specified in writ of error.**

Supreme Court will not consider exceptions to petition to which no reference is made in writ of error.

2. **Waters and water courses** ⬅263—**Whether irrigation company breached contract with customer held for jury (Rev. St. 1925, arts. 7555, 7557).**

Under Rev. St. 1925, art. 7555, providing that persons holding land contiguous to ditch shall be entitled to be supplied with water according to contract, and article 7557, providing that in case of shortage all waters shall be divided pro rata, issue whether irrigation company was derelict in furnishing water to a customer under contract *held* for jury, where evidence showed shortage and damage and that some customers were supplied.

3. **Contracts** ⬅171(1)—**Contract is entire when intention is that all parts shall be interdependent.**

A contract is entire, when by its terms, nature, and purpose it contemplates and intends that each and all of its parts and the consideration shall be common and interdependent.

4. **Contracts** ⬅171(1)—**Whether contract is entire is one of intention to be determined from language and subject-matter.**

Primarily, question of whether contract is entire is one of intention to be determined from the language and the subject-matter.

5. **Waters and water courses** ⬅263—**Instructions granting irrigation company's customer crop on part of land and denying damages for loss on remainder held erroneous under entire contract.**

Instructions, in suit by irrigation company against rice farmer, granting defendant all rice on 180 acres without payment to company, and denying him recovery of damages for loss of crop on 310 acres, *held* erroneous, the contract to furnish water for 490 acres in consideration of one-fifth the crop being entire and not severable.

**6. Contracts ☞266(1)—Party cannot wholly rescind contract, entire in character, and keep benefits received.**

One who has received benefits from valid contract, entire in character, cannot rescind entirely, but may recover for damages by pleading and proving them.

**7. Work and labor ☞14(3)—One accepting part performance of contract is liable for its value.**

One who accepts part performance of work under contract beneficial to him is liable for its value.

**8. Damages ☞23—Measure of damages for breach of entire contract is proximate loss probably contemplated by parties as result of breach when contract made.**

Ordinary measure of damages for breach of contract, entire in character, in absence of willful wrong or gross negligence, is natural and proximate loss occasioned by breach such as may be supposed to have been in contemplation of parties at time contract was made as probable result of breach.

**9. Waters and water courses ☞263—Irrigation company's customer could deduct expense and damage from value of crop due company under broken contract.**

Where irrigation company failed to prorate water among customers during shortage, customer *held* entitled to deduct expense of procuring other water for part of land, and special damages due to breach, from value of company's agreed portion of crop.

Error to Court of Civil Appeals of First Supreme Judicial District.

Action by the Markham Irrigation Company against Sig Brown, in which defendant filed cross-action. The district court directed a verdict against plaintiff on its claim, and for plaintiff and against defendant on his cross-action. The Court of Civil Appeals affirmed the judgment on error proceedings by both parties (286 S. W. 574), and they bring error. Judgments of the district court and Court of Civil Appeals both reversed, and cause remanded to the district court.

John W. Gaines, of San Antonio, and C. R. Wharton and S. H. German, both of Houston, for plaintiff in error.

Kelley & Hawes, of Wharton, and Styles, Krause & Erickson, of Bay City, for defendant in error.

SHORT, J. The opinion of the Court of Civil Appeals in this case is reported in 286 S. W. 574.

The transaction out of which grew this lawsuit had its beginning in the month of January, 1917. The plaintiff in error, an irrigation corporation doing business with the rice farmers in Matagorda county and securing its water supply from the Colorado river, on the west side of which the lands it proposed to irrigate are located, filed this suit against the defendant in error on Oc-

tober 2, 1917, alleging that it had a contract with the defendant in error to use its best efforts to furnish the latter with water sufficient to make a rice crop on 490 acres of land belonging to the defendant in error during the year 1917, based upon two written instruments, one dated the 2d day of January, 1917, and the other March 29, 1917, both of which were set out in the petition. In return for which furnishing of the water, the defendant in error was to plant, cultivate, thresh, sack, and deliver to the plaintiff in error one-fifth of the rice produced. Allegations were made to the effect that the defendant in error had produced $20,000 worth of rice, of which the plaintiff in error was entitled to $4,000 worth, but that the defendant in error had refused to make such delivery and had appropriated all of the rice to his own use and benefit, notwithstanding the plaintiff in error had complied with all of its obligations imposed by the terms of the two instruments. Certain other allegations were made for the purpose of getting possession of this part of the rice, and negotiations, having been commenced, finally resulted in an agreed order of the district court of Matagorda county, directing the defendant in error to deliver to the plaintiff in error one-fifth of the rice so produced on the land irrigated, upon the filing by the plaintiff in error of a bond with sureties conditioned for the payment of $4,000 to the defendant in error should the plaintiff in error fail in securing the relief it sought.

[1] The defendant in error filed many exceptions to the petition, some of which were sustained and some were overruled, but with which the Supreme Court has no concern since no complaint is made with reference thereto in the writ of error. However, the defendant in error did plead a general denial as well as special defenses, among which were allegations to the effect that the plaintiff in error had failed and refused to use its best efforts to furnish him water when he needed it, and that he had procured water from another source by installing a pumping plant, and had watered 180 acres of his land which would have been a total loss to him had he not so procured this water, from which 180 acres of land he produced the rice, a part of which was sought to be appropriated by the plaintiff in error, no part of which belonged to the plaintiff in error on account of its failure to use its best efforts to furnish the necessary water, thus and thereby supporting his contention that the plaintiff in error was not entitled to any portion of this rice so produced by reason of his having secured this water from another source by his own efforts. He also filed a cross-action, alleging in substance, that it was contemplated between the parties that

he should plant, cultivate, and gather rice from 490 acres of land, describing the land, and that the plaintiff in error was to use its best efforts to furnish him all the water necessary to enable him to produce a crop of rice thereon; that defendant in error had complied with all the obligations he had assumed in the contract described in the pleadings of the plaintiff in error, but that the latter had failed and refused to comply with its obligations thereunder, in consequence of which failure and refusal he had not been able to produce any rice whatever on 310 acres of this land, the proximate cause of which failure was the refusal of the plaintiff in error to comply with its obligations under the contract; whereby the defendant in error had been damaged to the extent of the net value of four-fifths of the crop he would have produced on the 310 acres on which he was unable to produce any crop, on account of not having any water to the extent of something more than $23,000.

The plaintiff in error replied to this cross-action by filing many exceptions to it, some of which were sustained and some overruled, but over which this court has no jurisdiction by reason of the fact that no complaint was made with reference thereto in the application for writ of error, and also pleaded general denial, and specially alleged that it had complied with all of its obligations to the defendant in error, using its best efforts to furnish him all the water he needed, alleging the particular efforts it had used, and also alleging that about the 10th of July, 1917, there had developed an unusual drouth in that section of the country resulting in a diminution of its supply of water, and that on the 15th of July, 1917, it had furnished the defendant in error with water in accordance with its agreement to do so, and that after said date, in the discharge of its obligation to others having equal rights with the defendant in error, it had been compelled to use all the water it had upon the lands of these others who had not received any water since it had furnished the water to the defendant in error, and that when the time arrived when defendant in error was entitled to receive other water it was impossible to furnish it on account of the existence of the drouth and diminution in the supply of the water under its control.

There was a jury impaneled and testimony was introduced by the respective parties, upon the completion of which the district judge delivered his charge to the jury, instructing it to return a verdict against the plaintiff in error and in favor of the defendant in error for the value of the one-fifth part of the rice produced on the 180 acres of land, and also instructing the jury to return a verdict in favor of the plaintiff in error and against the defendant in error de-

292 S.W.—55

nying to the latter any recovery on his cross-action. The verdict having been so returned and a judgment having been entered in accordance therewith, motions for new trials were filed in and overruled by the district court; whereupon notices of appeal having been given, appeals by the respective parties were duly prosecuted to the Court of Civil Appeals at Galveston, where the assignments of both parties were overruled and the judgment of the district court was affirmed. Both parties filed applications for writs of error in the Supreme Court, and, these writs having been granted, the case has been referred to this section of the Commission for disposition.

[2] While there are several assignments of error and many propositions submitted in support of them contained in the applications for writs of error, all of these assignments refer to the action of the Court of Civil Appeals in sustaining that of the district court in withdrawing the case from the jury and giving the instructions above mentioned, resulting in the judgment rendered in that court. The plaintiff in error contends that there was sufficient testimony introduced by it to sustain a verdict of the jury in its favor upon the issues raised by the pleadings, upon which a judgment could have been rendered for one-fifth portion of the rice produced on the 180 acres of land. Upon the other hand, the defendant in error likewise contends that he produced sufficient testimony in support of his cross-action which would have justified the rendition of a verdict by the jury in his favor for some amount of damages, alleged by him to have been sustained on account of the alleged failure of the plaintiff in error to use its best efforts to furnish him with water necessary to save his crop of rice on the 310 acres, an entire loss of which was the result of the alleged unjustifiable failure of the plaintiff in error to furnish him water necessary to produce said crop on said 310 acres. A more detailed statement of the pleadings of the parties is made in the opinion rendered by the Court of Civil Appeals, to which we refer in aid of this statement.

The statutes of this state involving the use of water belonging to the state and water rights and the privilege of irrigation companies are collated, under title 128 of the Revised Statutes of 1925, commencing with article 7466 and ending with article 8280, only two of which, however, are involved in this litigation. Article 7555 reads as follows:

"All persons who own or hold a possessory right or title to land adjoining or contiguous to any dam, reservoir, canal, ditch, flume or lateral, constructed and maintained under the provisions of this chapter, and who shall have secured a right to the use of water in said canal, ditch, flume, lateral, reservoir, dam or lake, shall be entitled to be supplied from such canal, ditch, flume, lateral, dam, reservoir or lake

with water for irrigation of such land, and for mining, milling, manufacturing, development of power, and stock raising, in accordance with the terms of his or their contract."

Article 7557 reads as follows:

"In case of shortage of water from drouth, accident or other cause, all waters to be distributed shall be divided among all customers pro rata, according to the amount he or they may be entitled to, to the end that all shall suffer alike, and preference be given none."

In the first article the defendant in error is shown by the testimony to be entitled to be supplied, under normal conditions, with water from the reservoirs under the control of the plaintiff in error for the irrigation of his land; while under article 7557, under the uncontroverted evidence in this case, this right to be so supplied was diminished so far as the amount of water he was entitled to receive by reason of the shortage of water from the drouth and the rights of others similarly situated as he was. Had there been no shortage of water from the drouth, or from any other cause, the right of the defendant in error, under article 7555, by virtue of his contract with the plaintiff in error, would have been unimpaired; and had the plaintiff in error, after making the contract, refused to comply with its terms and damage had resulted as the result of such failure, the defendant in error would be entitled to recover such damage. However, since the testimony is uncontradicted that a shortage of water did result from the unprecedented drouth and that the defendant in error did sustain damage resulting from an insufficient amount of water to produce his crop of rice, an issue was raised by the pleadings and the testimony whether the plaintiff in error was derelict in its duty under the terms of the contract to furnish such water and avoid such damage. It must be noted in this connection that the record shows without substantial contradiction the performance by both parties to the contract of their several obligations thereunder up to and including about the 15th day of July, 1917, and, further, that had the defendant in error received all the water he needed from the plaintiff in error up to about the 1st of August, 1917, he would have received all the benefits which he contemplated he would receive when the contract was made from the furnishing of the water. This state of the record necessarily confines the material testimony to the issues which relate to the conditions existing as to the water supply between the 15th of July and the 1st of August and to the conduct of the parties between said dates.

The contention of the plaintiff in error is that it furnished to the defendant in error all the water he was entitled to receive under existing conditions by making delivery thereof to him on the 14th of July, 1917, and that under existing conditions, and its obligations to others having equal rights with the defendant in error, it could not rightfully deliver to the defendant in error any more water until the 29th of July thereafter, at which time there was no more water within its control to deliver, and, even if there had been, the delivery of such water would not have been beneficial to the rice crop of the defendant in error. The contention of the defendant in error is that he did not receive on the 14th of July his quota of water, and that, even if he had received it, yet thereafter on account of the special conditions existing he ought to have received additional water in time to have saved his crop from absolute loss, but that instead of delivering this additional water to him, he alleges the plaintiff in error discriminated against him and in favor of others by delivering water to the latter, whereby their crops were saved and his lost, except that portion he was enabled to save by procuring water from another source by his own independent efforts. The record also shows, without contradiction, that up to the 15th of July the condition of all the rice crops belonging to persons with whom the plaintiff in error had contracted to furnish water were in good condition and would have remained in good condition had sufficient water been furnished up to about the 1st day of August, when the supply of water had practically ceased and when the crops would have matured, had water been furnished previous to that date. The record also shows that the defendant in error's 490 acres of land were located some distance from the location of the original supply of water in the Colorado river, and that, in order to furnish him water, it was necessary to re-lift it at a certain point, at which point there were means furnished whereby the relifting could be secured. Testimony also shows that this relift plant at this point was shut down immediately after the defendant in error was furnished water on the 14th of July and was not operated thereafter. The record also shows that the plaintiff in error furnished other customers, among whom was its president, who produced a reasonable crop of rice from 2,700 acres of land located in what was known as the Ell·Maton country, located to the south of a point on the Colorado river which flowed south, opposite which was located the lands of the defendant in error, up to about the 29th day of July, and that on account of having so furnished this water these people, who occupied the same relation to the plaintiff in error under their contracts, made that year about the same quantity of rice per acre as the defendant in error made on the 180 acres of land, which he watered from another source and by his own individual efforts.

[3, 4] As a general rule, it may be said

that a contract is entire when by its terms, nature, and purpose it contemplates and intends that each and all of its parts and the consideration shall be common each with the other and interdependent. Del Curto v. Billingsley (Tex. Civ. App.) 169 S. W. 393; 13 C. J. 561. Primarily, the question whether a contract is entire or severable is one of intention, which intention is to be determined from the language which the parties have used and the subject-matter of the agreement. A contract may both in its nature and terms be severable, and yet rendered entire by the intention of the parties. 13 C. J. 526.

[5] This contract between these parties, measured by the foregoing definitions, was evidently intended by the parties to be, and was in fact, an entire contract, and not a severable one. The instructions of the trial judge to the jury, which were approved by the Court of Civil Appeals, had the legal effect to construe this agreement of the parties under which this litigation arose as a severable one and not entire in its nature. In consequence of this construction, it gave to the defendant in error all the rice grown on 180 acres of land, and it denied to him a recovery of any damages on account of the loss of his crop on the 310 acres of land. And yet the agreement of the parties had reference to this body of land containing 490 acres as an entirety, and there was no testimony whatever showing that when the parties made the agreement they recognized any distinction between any parts of the entire land embraced in the contract. The suit was based by the plaintiff in error upon the allegation that such a contract was made, and that it had complied with its terms. The allegations of the defendant in error in the cross-action were similarly based, and that, while he had complied with all the obligations imposed by it upon him, the plaintiff in error had failed in its obligations and loss had resulted as the proximate cause. So, we see that both suits, the one by the plaintiff in error in the form of a petition and that by the defendant in error in the form of a cross-action, were based upon the fact that a contract existed between the parties whereby certain reciprocal rights and duties were set forth. We think this misconception of the character of the contract by the district court, which was approved by the Court of Civil Appeals, has been the cause of the errors committed of which both parties complain, and, as we think, justly so. Had the trial court construed the contract as an entirety and not as a severable one, it probably would have applied a different principle of law to the facts in existence.

[6] One who has received benefits from a valid contract, entire in its character, cannot rescind it entirely, but may recover his damages from another by pleading and proving them. Navarro Publishing Co. v. Fishburn, 2 Posey, Unrep. Cas. 594. The testimony is uncontradicted in this case that on the 15th of July, 1917, the defendant in error had growing on his 490 acres of land, by reason of water furnished by the plaintiff in error, a crop of rice in good condition. It must be presumed from the fact that the defendant in error was willing to surrender one-fifth of his entire crop of rice to the plaintiff in error, in return for the delivery to him of sufficient water to mature the crop, that the water so delivered, was at least useful, if not absolutely necessary, to enable him to produce a good crop. While the record is not very clear on the subject, it does show that a considerable quantity of water was furnished the defendant in error by the plaintiff in error under the terms of this contract, and that the defendant in error received benefits therefrom.

[7, 8] It is a familiar principle of the law that one who accepts part performance of a work beneficial to him is liable for its value. Hillyard v. Crabtree, 11 Tex. 267, 62 Am. Dec. 475; Carroll v. Welch, 26 Tex. 147. Under this principle of the law and these facts, the plaintiff in error was entitled to recover from the defendant in error the value of the water furnished to the extent of the benefit received, measured, of course, by the valid provisions of the contract. The ordinary and proper measure of damages for breach of a valid contract entire in its character, in the absence of a willful wrong or gross negligence, is the natural, direct, and proximate loss occasioned by such breach, such as may be supposed to have been in contemplation of the parties at the time the contract was made as a probable result of the breach of it. Brandon v. Manufacturing Co., 51 Tex. 121; Hadley v. Baxendale, 9 Exch. 341.

[9] The contract in this case imposed upon the plaintiff in error the duty of using its best efforts to furnish the defendant in error, subject to the rights of others and to the existence of a sufficient supply, whatever water was necessary to enable the defendant in error to produce a crop of rice on 490 acres of land during the season of 1917, and from the defendant in error's standpoint, this duty not having been discharged, the latter was entitled to the benefit of his contract, but he did not have the right under the law to deny to the plaintiff in error, in an adjustment of the equities between them, the value of the benefits he had received up to the time that he claimed the contract was violated. There had been a partial performance by both parties up to this time of the entire contract, which was the production of a rice crop on 490 acres of land and a division of it according to the terms of the contract and delivery in a certain condition of one-fifth to the plaintiff in error. Under this situation as it existed,

the defendant in error proceeded to minimize the loss resulting to him from the alleged failure of the plaintiff in error to carry out its contract by procuring and using water from another source. In doing this, he was simply doing his duty under existing conditions and the terms of the contract. Whatever expense he incurred in procuring and supplying this water, which the plaintiff in error, according to the allegation of defendant in error, ought to have supplied, could properly be charged to the former. Deducting this expense, together with any special damages incident to, growing out of, or connected with, the alleged failure of the plaintiff in error to discharge its obligations under the contract, from the value of the portion of the rice produced on the land actually thus supplied which, under the terms of the contract, belonged to the plaintiff in error, the remainder, if any, belonged to it. 2 Wait's Actions and Defenses, 456; 2 Sutherland on Damages, 473. So, we think that the trial court erred in instructing the jury to find for the defendant in error the net value of one-fifth of the rice harvested from the 180 acres of land, and we therefore sustain those assignments of error of the plaintiff in error, calling in question this action of the court.

We think this conclusion is correct, especially in view of the finding of fact by the Court of Civil Appeals that all of the rice crop on the 490 acres belonging to the defendant in error was in good condition up to about July 15, 1917, and was approaching maturity, and that thereafter the procuring of water from other sources sufficient to mature the rice on the 180 acres was the efficient cause, coupled with the performance of the duties imposed upon the defendant in error, for the production of the crop on this 180 acres.

The testimony in the record demonstrates that those persons, who did, in fact, receive from the plaintiff in error sufficient water during the entire season to supply their needs, harvested a normal crop of rice. There is no testimony indicating that the lands belonging to these people who did receive this sufficient supply of water were lands of better quality or more favorably situated than the 490 acres belonging to the defendant in error. Moreover, the testimony is uncontradicted that by means of the water procured from another source and applied to the 180 acres of rice by the defendant in error, in conjunction with the condition of the rice at the time, this was the procuring and sufficient cause of the maturity of a good crop of rice on this 180 acres of land. The testimony is also uncontradicted that,

notwithstanding the good condition of the crop of rice on the 310 acres at the time the water was applied on the 180 acres, a total loss resulted by the inability of Brown to procure sufficient water to apply to this 310 acres. Had he been able to secure this water and to have applied it on the 310 acres as he did on the 180 acres, there is every reason to believe that the same results would have been secured from the crop growing on the 310 acres as were secured from that grown on the 180 acres. We therefore think that there was ample proof to have enabled the jury to fix the damages the defendant in error sustained from the entire loss of a crop on the 310 acres as a result of the plaintiff in error's alleged failure to legally prorate and so give to the defendant in error his share of the water it had under its control after the shortage occurred. While the pleadings as well as the testimony in this case are voluminous, the material issues of fact are few. The plaintiff in error by its pleading and testimony contended that it had performed all of the conditions of the contract and framed its complaint accordingly. Upon this theory it went to trial and so tried the case. Upon the other hand, the defendant in error contended that, while he had complied with all the terms of the contract imposed upon him, the plaintiff in error had not in certain particulars, which he alleged, the failure to perform, which resulted in damage as the proximate cause of his loss, alleged in his cross-action as well as in his answer, for special damages growing out of, incident to, and connected with, the alleged breach of the contract by the plaintiff in error. Each party supported the theory upon which was based the claim for relief by testimony, which, in our opinion, is sufficient to raise the issues presented by the pleadings, and therefore the verdicts given in response to the instructions from the trial court and approved by the Court of Civil Appeals, in our opinion, constituted reversible error.

We therefore recommend that the judgments of both courts be reversed and the cause remanded to the district court of Matagorda county for another trial and further proceedings not inconsistent with the principles of law enunciated in this opinion.

CURETON, C. J. Judgments of the district court and Court of Civil Appeals both reversed, and cause remanded to the district court, as recommended by the Commission of Appeals. We approve the holding of the Commission of Appeals on the questions discussed in its opinion.