The opinion of the court was delivered by
Watkins, J.
The plaintiff sued the defendant for six thousand eight hundred and sixty-one dollars, alleging that they, together with certain parties named, cultivated and prepared for rice culture, by ploughing and planting and sowing rice thereon during the year 1896, the following proportions respectively of the land contained in Section 16, township 12, south range 1, west, in Vermillion Parish; plaintiffs’ two hundred acres being in the eastern portion of the section; J. N. Eoutz, one hundred and fifty acres, being in. the upper portion of the east half of said section and containing fifty acres and one hundred in the centre of the west half of the section; T. L. Harrald, one hundred and fifty acres, being in the west half of said section south of the hundred acre lot of Eoutz; Horace Taylor, fifty acres, being in the upper portion of the west half of said section and north of Eoutz, and twenty-five -acres in the southern portion of the west half and south of Harrald’s.
*1466 That Eoutz had leased said section of the Board of -School Directors of Vermillion Parish, for the years 1895, 1896, and the other parties named, sub-leased the other stated portions from Eoutz, for the purpose of making rice crops during the year 1896.
That petitioners, after leasing the -said two hundred acres made all necessary levees and other works thereon; ploughed the lana m a proper manner, planted the same in good seed rice, which came up in due time, and placed said land and crop in condition to have made a large crop thereon, but for the w-aart of- water to irrigate the same.
That in the month of May, realizing the importance of securing an adequate supply of water to irrigate said rice, petitioners made a contract with defendants to furnish from their cand and planting plant, then owned and operated by it, a sufficiency of water to make said rice grow to maturity, the details of which contract would be in the written act evidencing the same. That though petitioners complied with all the stipulations of said contract, and more especially did everything necessary to receive the water which said company had agreed to furnish, by making a-11 Works necessary to receive and convey the said water to their crop of rice, and to hold same thereon, defendant failed to comply with said agreement, and only furnished a small supply of water on one occasion which Waá sufficient to flood and irrigate only a small part of their said crop, and that very imperfectly.
That the year 189'6 was an extremely dry year and the rain fall meagre during the months of May, June, July, August and September, so that no rice crops were or could be .produced without irrigating by artificial means as well known to the defendant company, and its officers and employees; that during said dry season as soon as water was needed up to the 15th of August, 1896, plaintiffs made repeated but unavailing demand, both written and verbal, on the manager and agents of said company for the necessary' supply of water to irrigate their said crops which, ■ during all of said time, was suffering for water, to the knowledge of the agents of said company; that besides, after several demands as aforesaid, petitioners made a formal written demand which was served upon the agents of said company and several verbal demands in the presence of witnesses on said agents to carry out their obligations stipulated in the contract, and in said demands said company, through its agents, was duly notified that petitioners’ crops would be entirely destroyed; lost and ruined by default on its part and *1467 petitioners caused large losses, all of which was, besides, however, well known to said company and its agents.
That the failure of the company to comply with its contract caused your petitioners losses in the sum of six thousand eight hundred and sixty-one dollars and fifty-two cents, as was detailed in the bill of particulars annexed to their petition; that said losses were and could be forseen on account of the default, failure and neglect of the company to carry out the terms of said contract, and said company is, accordingly, liable to plaintiffs for said amount; that the company was guilty of an active violation of said contract, under the circumstances stated, and the putting in default was unnecessary legally.
That defendant was further indebted to plaintiffs in the sum of twenty-four dollars for dump scrapers, sold and delivered to defendant during the month of February, 1895. The contract referred to was as follows:
Contract.
State of Louisiana, :
Parish of Vermillion. :
May 20th, 1896. This contract and agreement, made and entered into by and between the Garland Canal Company, Limited, as parties of the first part, J. N. Foutz, Landers & Donnelly, T. L. Harrald, Horace Taylor, as party of the second part, all residents of Vermillion Parish, State of Louisiana, witnesseth: That party of the first part, being proprietors and owners of the said Garland Canal, hereby agree to furnish to parties of the second a sufficient supply of water, including rainfall, to flood or irrigate and mature said crop óf rice, containing in all about 400 acres of land planted in ríce located in section 16, T. 12, S. R. 1, W., for the year 1896, where the water will flow from said canal, without additional expense to parties of the first part.
Party of the second part agrees to keep in good condition all levees, dams, etc., on land described and to see that there is no unnecessary waste of water, either of leakage of levees or the lack of sufficient cross-levees to protect the same, and to make or build all necessary levees, dams, flumes, etc., to convoy water, also to build south half of canal passing through section 15 and on land above described. Party of the second part agrees to pay the party of the first part a yearly rent of two barrels (162 pounds each) per acre and hereby grant the party of *1468 the first part a lien and privilege on the crop of rice raised on said land to guarantee payment of rent of said land irrigated to be paid and settled when threshed. It is also well understood and agreed by and between parties of the first part and second part that all levees are to be located at any point of the lands to be irrigated, and the party of the first part has a right to withhold water on any land mentioned where in his opinion there is not a sufficient stand to warrant an average crop or levees are not sufficient to flood or hold water on the land without leakage or waste, -the party of the second part is to give the party of the first part at least forty-eight hours’ notice of the time he may require water; it is also agreed and understood that the party of the first part are not to be held responsible for any unforseen causes or accidents or delays not caused by their own account or the lack of water from the main bayou from which the general supply of water is obtained, and parties of the first part alone - have control of said main canal; parties of the second part have no right to cut or open or interfere with said canal without the consent of parties of the first part, and to this contract parties of the first and second part bind their heirs and assigns; it is further understood that the parties of the second part agree to haul said water rent or two barrels per acre the same to be delivered immediately after the said rice is threshed; and it is also agreed to haul same to Gueydan Station and put in cars or warehouse at the option of the party'of the first part; it is also further agreed by parties of the first part, that parties of the second part shall have water by the 15th of June, 1896, also party of the first part further agrees to exempt parties of the second part from any water rent in ease of any accident or of the bayou being insufficient to supply water on lands mentioned; but in case party of the first part have only enough water to irrigate said land once, and not enough to mature said rice, the parties of the second part agree to deliver one barrel, instead of two.
Signed in duplicate. C. J. Freeland, B. R. Garland, manager; J. Foutz, Landers & Donnelly, T. L. Harred, Horace Taylor.
Witnesses. J. T. Gillentine, W. M. Skinner.
Filed February 27, 1897.
L. II. 'Clark,

Deputy Clerk.

*1469 Defendant answered.
After pleading the general issue, but admitting the entering into of the contract annexed to plaintiff’s petition, it averred that it specially denied that it was liable to plaintiffs for any amount of money claimed by them in the petition; they averred that they carried out in good faith the stipulations of their contract with the plaintiffs, and that if they did not furnish sufficient water to irrigate perfectly the plaintiffs’ land and to enable them to raise thereon a full crop of rice, their failure to do so resulted from the lack of water in the main bayou, from which the general supply of water was to be obtained; and that by the terms of the contract itself they are relieved from any responsibility to the plaintiff for said cause.
Defendant further represented that by the terms of the contract the plaintiffs were to construct their own laterals and maintain them and attend to them and keep them in good order according to plan or profile furnished by the defendant company, and that plaintiffs constructed said laterals in an imperfect and careless manner so that the flow of water was greatly retarded thereby; and that the flow of water on the plaintiffs’ land was further impeded and obstructed by reason of a board being placed in an opening in plaintiffs’ levee by some party or parties not in the employ of the defendant company, and for which defendant company is not responsible, and that defendant company’s manager himself removed said board, and that the flow of water upon the plaintiff’s rice land was to some extent interrupted and impeded by said board.
Respondent further averred that the plaintiff contributed to the damage complained of by reason of the fact that their laterals were not ready to receive the water at the time defendant company was ready to furnish it, and that considerable delay in watering plaintiffs’ rice land was caused thereby and that the plaintiffs’ laterals would not have been ready, even at the time that defendant began to supply water to respondent, had not B. R. Garland, one of the managers of defendant company, upon his own motion voluntarily aided them in building their laterals to get the¡m ready to hold water on their fields.
Respondent further represented that the plaintiffs themselves recognized the fact that they, respondents, had done all in their power under the contract to furnish sufficient water to raise plaintiffs’ crop, and that one of the plaintiffs, Hicklin J. Landers, after the crop had *1470 matured and while he was having his rice hauled, promised B. R. Garland, one of the defendants, that the plaintiffs would settle for their water rent as soon as they got their rice to the warehouse, and that Garland, relying upon the promise at the time, did not require settlement, which, had he done, the rent rice, due the defendant company, by the plaintiffs, would then and there have been paid. Therefore respondent averred that this suit for damages was and is a mere after thought, filed and being pressed for speculative purposes, and not to secure substantial justice.
The defendant company finally averred that though by reason of the failure of the bayou to furnish- sufficient water to mature the plaintiffs’ rice crop, yet, under the last clause of the contract, tne defendant company is entitled to one barrel of rice per acre from the plaintiffs as water rent, but as they can not now deliver up the rice, and as plaintitr cultivated one hundred acres in rice in the year 1896, and as rice tnat season was worth $3.00 per barrel, that plaintiffs owe to the defendant company the sum of three hundred and fifty dollars ($350.00), being the value of the rent rice due, and which defendant company now claims in reconvention of the plaintiffs.
In view of the premises the defendant company prayed that the demands of the plaintiffs in this suit be rejected and disallowed, and that defendant company have judgment in reconvention against the plaintiffs, jointly and severally, for the sum of three hundred and fifty dollars, the water rent due them now by the plaintiffs and still unpaid, with interest at five per cent, from November 1, 1896, until paid, and for general relief in the 'premises; and defendant prayed for trial by jury and for' general relief.
Plaintiff filed a motion asking that the court order defendant to elect which particular defense it would stand upon, urging and averring that there was inconsistency in the defenses.
Motion to Elect.
Landers i& Donnelly :
vs. :
Garland Canal Company. :
No. 882, Eleventh District Court, Acadia Parish, La.
Now into court comes Landers & Donnelly, and James E. Barry, *1471 receiver and liquidator of said firm, plaintiffs herein, and respectfully aver:
That there is inconsistency in the defenses set up herein in this; that the answer sets out, first, a general denial which, substantially, traverses the main averments in plaintiffs’ petition; that defendants neglected and failed to furnish a sufficiency of water to irrigate plaintiffs’ rice crops; thereafter, the special defense that defendants did comply with their contract by furnishing a sufficiency of water; while in a subsequent part of the answer, defendant contends that the failure of plaintiffs to receive a sufficiency of water was due to their neglect to have their laterals and ditches (as alleged) in proper order to convey said waters to their lands, and to the obstruction caused by permitting a board to obstruct and impede the flow of water to said lands.
That said defenses are inconsistent, and defendants should be required to elect on which of said inconsistent defenses they will proceed to trial,- and be restricted to said defenses and no other, and the defendant be required to make such election before proceeding to offer any' evidence.
That this motion is made at the beginning of the trial and before the offering of any evidence by defendants, and while the first witness of plaintiffs is yet under examination.
Wherefore, petitioners move that defendants be ordered to elect as above set forth, and that all evidence on the part of defendants he rejected until such election bo made; and movers pray for all general relief and costs.
The application was refused, reserving the right to plaintiffs to object to improper or inconsistent evidence.
The plaintiffs firm having been placed in the hands of a receiver, he made himself a party to the action. *
The court rejected plaintiff s’. demand and dismissed the suit, and plaintiffs appealed.
Opinion.
This is an action for recovery of the damages that are alleged to have resulted from the non-payment of a contract to do, and in compensation for the injury suffered thereby — the period of time stipulated for performance having elapsed, and the object for which the covenant was entered into, terminated.
*1472 The record discloses that the plaintiffs were engaged in planting rice during the year 1896, and, realizing that they did not have a sufficient natural supply of water for the purpose of irrigating their land, in order to guarantee a good yield, they entered into a contract with the defendant to furnish them an adequate suinply to enable them to 'grow and mature a crop — that season being an unusually dry one, and the fall of rain meagre, a crop of rice .could not be produced without irrigating the land by artificial means.
The plaintiffs aver full compliance on their part with all the conditions and obligations of the contract, the defendant’s failure to perform its part, and that demand had been made for' performance without avail and the resulting damages which they claimed through the defendant’s failure to perform its contract.
From the text of the agreement, it appears, that the defendant came under obligation to plaintiffs to furnish “a sufficient supply of water, including rainfall, to flood or irrigate and mature a crop of rice,” on land to be so planted, that “the water will flow from its canal without additional expense to the party of the first part” — the defendant.
It also appears that the plaintiffs, as parties of the second pan, agreed “to keep in good condition all levees, dams, etc., on the land described, and to see that there was no unnecessary waste - of water either by leakage or levees, or the lack of sufficient cross-levees to protect the same;” and, also, “to make or build all necessary levees, dams, flumes, eta, tó convey the water,” and to build half of the canal which passes through section fifteen of the plaintiffs’ land.
It was expressly stipulated' and mutually agreed by the parties, “that all levees were to be located at any point of the lands to be irrigated.” which the defendant might select, and that defendant had “a right to withhold water from any land mentioned, when, in its opinion, there was not sufficient stand (of rice) to warrant an average crop, or where the levees were not sufficient to .flood or hold water on the land without leakage or waste.”.
It was, also expressly stipulated and agreed by and between the parties that the defendant “is not to be held responsible for any unforseen erevass, or accident, or delays not caused by their own account, or the lack of water from the main bayou from which the genéral supply of water is obtained;” and that it reserved and retained full and complete control of the main'or connecting canal, and that plaintiff *1473 bad “no right to cnt, or open, or interfere with said control” without defendant’s consent — the plaintiffs to have a full water supply by the fifteenth of June.
The defendants answer denies any and all liability to the plaintiffs, and avers that the company carried out faithfully and to the letter, the terms of its contract; and that if it did not furnish “sufficient water to perfectly irrigate the plaintiffs’ land and enable them to raise a full crop of rice thereon, its failure to do so resulted from the lack of water in the main bayou from which the general supply of water was to be obtained, and that, by the terms of the contract ,it is to be relieved from any responsibility to the plaintiff for said cause.”
It further represents, that, by the terms of the contract, the plaintiffs obligated themselves to construct their own laterals, maintain the same, and keep them in good order, “according to a plan and profile furnished by the defendant;” but that, on the contrary, plaintiffs “constructed said laterals in an imperfect and careless manner, so that the flow of water was thereby greatly retarded.”
That the flow of water on the plaintiff’s land was “further impeded and obstructed by reason of a board having been placed in an opening in plaintiffs’ levees by some party or parties not in the employ of the defendant, and for which it was not responsible;” and that its manager removed said board “and that the flow of water upon the plaintiffs’ rice land was, to some extent, interrupted and impeded by said board.”
Further, that the plaintiffs either caused or contributed to the damage complained of, if any, by reason of the fact that they failed to construct their laterals in sufficient time to receive water at the time the defendant was ready to furnish it; and that their laterals would not have beeii ready at the time same were actually completed, had not the defendant’s manager voluntarily aided them in building same, and getting them in readiness to hold the water on their fields.
The cause was tried by the judge of the District Court, and on due consideration of the law and the evidence, he rendered a judgment rejecting plaintiffs’ demands at their cost.
In the course of the judge’s written opinion and reasons for-judgment, he says, that he is “satisfied that the canal people did all that was in .their power to give the plaintiffs all the water they could”— reciting the testimony supporting his belief.
*1474 He further states, that the defendant was not aware that the plaintiffs were not receiving their full share of water from the canal, or that there was any complaint on that score; that its knowledge of their shortage of water came too late, because the bayou from which it derived its supply of water for the supply canal, had gone dry,
That this was the cause of there being no rice crop made in that year.
He again says “Landers & Donnally could have made a better crop than they did, if they had helped themselves to water as their co-tenants did.”
His opinion proceeds upon the theory (1) that a party who neglects or fails to make use of an opportunity that is afforded him of lessening, to the extent of his means and ability, the injury that is about to be inflicted upon him, is inot entitled to compensation at the hands of the one by whom the same has been inflicted, except to the extent that same was- within his personal knowledge and might have been prevented by him.
He was of opinion that by the terms of the contract, no duty was cast upon the defendant to regulate the amount of water'each one of the various lessees was entitled to receive inter se — all of the lessees of rice lands having entered into one contract jointly with the defendant to furnish them a supply of water.
That his interpretation of the contract was, that the defendant was to send sufficient water down the canal to supply the rice fields, and that the lessees were to distribute it among themselves.
That defendant did all it could to carry out its contract, and would have done so', but for an insufficiency in the natural supply of water that it obtained from a bayou upon which its reliance for a supply of water to be furnished to the rice farmers was placed — same having failed on account of the prevalence of a drought, no rain having fallen, except once, during the time water was needed for purposes of irrigation.
That the proof discloses, that a short crop was made — about three or four hundred sacks, in all — but that the plaintiffs retained the whole, and surrendered none of same to the defendant in satisfaction of its demand for water rent.
The opinion says:
“Plaintiffs did not turn over any rice to defendant. 'He who seeks *1475 equity, must do equity.’ He can not be permitted to retain all the' crop, and sue tlie defendant for damages besides, and which I am of opinion, it does not owe. They were as much at fault, if not more so, than defendant, in not endeavoring to help themselves; or at least, in making an honest effort so to do.”
Our own investigation of the record has led us to the same conclusion as that which was announced by the district judge.
It is evident from an inspection of the contract, as well as a perusal of the evidence, that the Canal Company expected to obtain a supply of water for the purpose of irrigating the plaintiffs’ lands, from an adjacent bayou; and that it, in turn, was to be supplied with water by the fall of rain.
On this subject the contract declares that the Canal Company is “not to be lield responsible for any unforseen causes or accidents, or delays, not caused by its own account, or the lack of water from the main bayou from which the general supply of water is obtained.”
The defendant resists the plaintiffs’ demand, principally, upon the ground that, from lack of rain, the quantity of water in tlie bayou became so diminished, that the plaintiffs’ farms could not be supplied, and that the contract exonerates the Canal Company from liability on that score.
We think that proposition is amply sustained by the evidence.
Water in the bayou was supplied exclusively by the fall of rain, and all the witnesses practically concur in the statement that during the season of 1896, there was an exceedingily limited fall of rain in the vicinity of the 'Canal Company’s sphere of operations, and of the plaintiffs’ farms, in consequence of which a drought prevailed, and the supply of water in the bayou failed.
True it is that plaintiffs’ claim that they did not receive a fair or proportionate share of water in the spring of the year, before the supply was cut short by the drought, when they were ready to receive it; but the answer made thereto is, that the water is made to flow from the main canal into the rice fields by means of what are called “laterals,” that is to say lateral drains, that must be kept open so that the water may pass through, and that the plaintiffs failed to keep their laterals open, so as to enable them to receive their due and proportionate share of water.
This fact is substantially shown by the evidence; and by this means, *1476 the plaintiffs are found guilty of a contributory negligence, even if the defendant is conceded to have been at fault.
But we do not think the proof demonstrates the fault' or negligence of the defendant, or that it was guilty of any violation of its contract.
We concur with the judge a quo in his finding of the facts upon which he rested his judgment.
In its answer the Canal Company sets up a demand in reconvention against the plaintiffs, for the sum of three hundred and fifty dollars, on the hypothesis that there were one hundred acres of land in cultivation in rice, and that the water rent amounted to that sum, though the judge a quo made no allowance on that score.
In an answer to the appeal, that contention has been renewed in this court, but we do not see our way clear to grant the relief prayed for, as the evidence shows that a very short crop was made, and that the plaintiffs as well as defendants made a losing venture through the intervention of the vis major.
Judgment affirmed.
Rehearing refused.
Nioholls, C. J., recused.