This suit was instituted by appellant, as executor of the will of Mrs. Hodges Beckham, deceased, against appellee, who was acting under a contract of agency executed by Mrs. Hodges Beckham during her lifetime, for the purpose of restraining appellee from collecting any rents or exercising any control over the estate of said deceased, and for the accounting for money collected during the years 1915 and 1916, and for judgment for any money so owing. A temporary injunction was granted as prayed for. Appellee answered, setting up the contract, and claiming compensation for part performance before and after the death of Mrs. Beckham. A trial was had before a jury, which resulted in a verdict and judgment for appellee for $307.93, from which this appeal is taken.
The evidence shows that the following contract was entered into between Mrs. Beckham, during her lifetime, and appellee, viz.:
"That I, (Mrs.) H. E. Beckham, a widow, have constituted, ordained, and made in my stead and place put, and by these presents do constitute, ordain, and make in my stead and place put, J. It. Scott to be my true, sufficient, and lawful attorney for me and in my stead to take over and control all of my cultivated lands in said county and state, to rent same out to good and competent farmers for the customary rentals, and to collect therefrom all rents that would become due me and pay same over to me except 10 per cent. of said rentals, which said 10 per cent. the said J. R. Scott is to retain as pay for his services as my agent or attorney. In constituting the said J. R. Scott my agent, I hereby give him all rights to manage and control said lands in his own way, to choose all tenants and deal fully with them as I would be empowered to do. That I will vacate said premises during the term of this contract or attorneyship, be in full force and effect from the 10th day of June, A.D.1915, and to remain in force and effect until January 1, A.D. 1919."
"It was stated and admitted in open court by both parties that the statement of account of John R. Scott, defendant, attached to his pleading, purporting to show the condition of his account as agent of Mrs. Hodges E. Beckham, and which shows a balance overpaid by and due to defendant, Scott, of $2.49, was true and correct, and that there was no dispute as to the correctness of such account; that it does, in fact, show the true condition of said account, and that the $2.49 is owing and unpaid to him (the account mentioned covered the crop for the year 1915). It was proved by defendant, John R. Scott:
"That acting under the above contract, on June 10, 1915, he took charge of Mrs. Hodges E. Beckham's farms, in Limestone county, consisting of several hundred acres, and which were then in possession of, and being cultivated by, about a dozen tenants to whom Mrs. Beckham had rented same prior to the execution of the contract. That the 1915 crops were then growing, and all the farm land covered by the contract, except about enough land for one tenant, was being cultivated by such tenants, and the cultivation of the crops (but not the harvesting and gathering thereof, the crops consisting principally of cotton and corn) was about complete. That Mrs. Hodges E. Beckham (then Mrs. Taylor, but herein called Mrs. Beckham) died, testate, in McCullough county, Tex., on December 13, 1915, leaving a will which was afterwards probated in that county. That there was no legal representative of her estate, and no one (unless it was defendant) authorized to take charge of same or look after it until the will was probated and plaintiff qualified as independent executor of her estate on August 15, 1916. That said will authorized plaintiff to act independent of the courts and manage and control said farms and all property of said estate. That the usual and customary time for renting lands such as the farm in question was and is during the summer preceding the year same is to be cultivated, and the defendant rented all of the said land to suitable and sufficient tenants in the summer of 1915 for the year 1916 and long prior to Mrs. Beckham's death, and such tenants properly cultivated all of said lands during the year 1916. That defendant continued to do and perform all of the acts and things which he agreed to do under said contract continuously from June 10, 1915, to the 30th day of August, 1916, when defendant was, at the *Page 138 
instance of plaintiff, enjoined and restrained by this court, in this cause, from further proceeding to execute or carry out his part of the same, at which time in obedience to such injunction he ceased to perform same, or do anything for said estate.
"That defendant, continuing under the terms of such contract, collected $195 of the rents from the 1916 crop after plaintiff qualified as such executor of said estate and before he was so enjoined, which was done over the objection and protest of plaintiff. That the defendant retained out of the proceeds of the rents of the crop of 1915 the entire 10 per cent. thereof of all rents collected by him and allowed him by the terms of the contract, except said sum of $2.49, and paid the entire balance thereof to plaintiff, leaving the estate indebted to him on that account $2.49. All of the rental contracts with all tenants for 1915 and 1916, both those made by Mrs. Beckham and those made by the defendant, were parol contracts. That all of the tenants for 1916, except one, were the same tenants as those for 1915. Defendant selected one new tenant for 1916. That the terms of the rental contracts for 1916 were the same as those for the year 1915, made by Mrs. Beckham, which was for one-third of the grain and one-fourth of cotton and cotton seed, and was and is according to the custom of the country. That the tenants gathered the crops of 1915 and 1916, carried the cotton and cotton seed to market, sold the same, and placed the rents to the credit of defendant in the bank, until he was enjoined, and would bring a deposit slip to the defendant, showing that the rents had been so deposited, and in that way only did defendant keep up with the account of cotton sold and rent due, except he did occasionally ascertain from the ginner the correctness of such report of cotton and cotton seed sold. That after plaintiff took charge of said lands and crops plaintiff engaged Mr. Webb, who supervised the gathering and marketing of the cotton and cotton seed, and collected the rents for plaintiff. The defendant collected $274.47 of the rents of the crop of 1916, and no more, that being all rents matured up to the time of the injunction, and $195 of this sum was so collected after plaintiff qualified as such executor. The defendant, in his said account retained $27.44 of this account, being the 10 per cent. allowed him by the contract and claimed by him under same. After the injunction was served plaintiff collected all unpaid rents for the year 1916, which amounted to $6,500 additional to those collected by defendant. That the services contemplated by said contract consist of seeking out suitable tenants and renting such land to such tenants. That in seeking suitable tenants it is necessary and proper to know or ascertain that such prospective tenant is honest and a good worker and has suitable teams, tools, and implements to cultivate the land, and is able to finance himself and knows how to farm successfully. That it is necessary and proper in order to obtain the best results, and the most rents, to frequent the tenants and advise with them and encourage them. That in collecting the rents it is necessary and proper to know or ascertain the amount of cotton and cotton seed sold by each. That the grain rent is delivered by the tenant on the farm. The defendant performed all of these duties after June 10, 1915, until he was enjoined, August 30, 1916. Both defendant and plaintiff testified that the value of the services rendered in procuring tenants and looking after the matters to the completion of the cultivation of the crop is about equal to the services thereafter rendered in seeing to the gathering and harvesting of the crop and collecting rents."
Under the facts adduced was appellee entitled to recover judgment for any services he rendered under the contract made with Mrs. Beckham after her death? We are inclined to think not. The agency of appellee was revoked by her death, it being one for personal services, not coupled with an interest, and his functions as such agent absolutely ended. Cleveland v. Williams, 29 Tex. 204, 94 Am.Dec. 274. Appellee set up the contract and sought to recover for services performed after Mrs. Beckham's death, but there was no allegation for services performed by him before Mrs. Beckham's death, nor the value thereof, but his whole plea was based upon the contract. The contract was not divisible for the year 1916, and, he not pleading a quantum meruit for the services rendered before her death, he was not entitled to recover. There is evidence tending to show part performance during Mrs. Beckham's lifetime, but as there was no proper pleading it was improper for the court to render judgment for appellee.
A case in point is Felton v. Talley, 31 Tex. Civ. App. 336, 72 S.W. 614. Mr. Chief Justice Fisher, speaking for the court, says:
"The contract declared upon is, in effect, entire, and in the absence of an averment seeking to recover upon a quantum meruit, the plaintiff must prove performance of the entire contract. Under the rule announced in this state, which is indicated in [Carroll v. Welch], 26 Tex. 149
[Rigge v. Horde], 25 Tex.Supp. 460 [78 Am.Dec. 584, Jemison v. Gaston],21 Tex. 259, although the contract might be entire, if the plaintiff had proved a part performance of which the defendant received the benefit, he could recover to the extent of the value of the part performed. But the plaintiff, the appellee here, has no pleading that permits this to be done. Therefore, on account of the absence of evidence tending to prove a performance by the plaintiff of the entire contract, the court erred in submitting the case to the jury. The contract as pleaded must in its essential features be established by evidence; otherwise it is error for the court to charge upon that subject."
Appellee asks that in the event of reversal we consider two cross-assignments of error, which are in effect that the contract is not of that distinctive personal nature that the death of Mrs. Beckham revoked the contract, and that appellee had the right to fulfill it and receive compensation for his services during the year 1916. As before said, we are of the opinion that the contract was revoked by the death of Mrs. Beckham, but that upon proper pleading by appellee he could recover for services performed before her death, but not for services performed after her death. The death of Mrs. Beckham was the act of God and not the fault of appellee, but the law decrees that such contracts shall be revoked upon the happening thereof, and we must follow such decrees.
The judgment is therefore reversed, and the cause remanded for a new trial. *Page 139