### ENTERPRISE CO. v. NEELY et al.
### (No. 1007.)

(Court of Civil Appeals of Texas. El Paso. Jan. 15, 1920.)

1. CONTRACTS 294—MUST BE SUBSTANTIALLY PERFORMED BEFORE ACTION THEREON.

A contract must be at least substantially performed according to the terms of agreement before a party can have any right of action thereon.

2. CONTRACTS 319(1) — NO RECOVERY ON PART PERFORMANCE IN ABSENCE OF ALLEGATIONS UPON QUANTUM MERUIT.

A plaintiff cannot recover on an entire contract by proving part performance without allegations authorizing recovery upon a quantum meruit.

3. CONTRACTS 280(2)—CONTRACT REQUIRED NONDELEGABLE PERSONAL SUPERVISION OF FARMING OPERATIONS.

A contract imposing a joint obligation to farm, cultivate, and gather a crop of cotton in a thorough and farmerlike manner necessarily implied that the persons jointly contracting to so do should personally supervise and superintend the operations, and such duty was nondelegable, and recovery could not be had under the contract where a third person was hired to superintend and do the work, in the absence of allegations of a quantum meruit.

Error from District Court, Ward County; Chas. Gibbs, Judge.

Action by E. Neely and another against the Enterprise Company. Judgment for plaintiffs, and the defendant brings error. Reversed and remanded.

---

Jno. B. Howard and Clay Cooke, both of Pecos, for plaintiff in error.

Starley & Drane, of Pecos, and J. A. Buck, of Crosbyton, for defendants in error.

HIGGINS, J. On September 30, 1916, the Enterprise Company, plaintiff in error, as the first party, and Erastus and Grover Neely, defendants in error, as the second parties, entered into a written contract, whereby it was agreed that the Neelys would cultivate and gather a crop of cotton to be grown in 1917 on 80 acres of land owned by the company. The material provisions of the contract, as pertinent to this appeal, are as follows: The Neelys agreed to farm and cultivate the land in a thorough and farmer-like manner and as frequently as needed, to keep the irrigation ditches and borders in proper condition, "to take full charge of the growing of said cotton crop," and to furnish all labor, teams, and machinery necessary for the planting, cultivation, harvesting, and irrigation of same, except that the company was to pay for the picking. The Neelys further agreed to superintend the picking, keep the weights, and deliver the cotton at the gin and railroad station.

The company agreed to furnish the necessary seed for planting, to pay all water assessments, and to pay the Neelys the sum of $2,500, payable as follows: $600 payable in monthly installments of $100 each on the 1st days of February, March, April, May, June, and July in the year 1917, and $1,900 in two installments of $950 each, on the 1st days of November and December in the same year.

On May 16, 1917, this supplemental agreement was indorsed upon the contract and signed by the parties, viz.:

"It is agreed as a supplement hereto that party of second part will personally supervise the work contemplated herein, and it is agreed that, in the event it is necessary to do or perform any work for the benefit of the crop, and party of second part should fail or refuse to do same, party of the first part may have such work done and charge same to account of second parties."

The Neelys filed this suit against the company, alleging performance by them of their contract and failure of the company to pay the installments of $950 each which became due on November 1st and December 1st, and for which judgment was sought.

The company defended upon the ground that the contract was a personal one with plaintiffs, and that plaintiffs had breached the same by delegating to others the performance of duties personally incumbent upon them, and that they had failed to properly farm and cultivate the land, whereby the crop had been injured and the yield lessened to its damage. The company reconvened for damages on account of the alleged breach of the contract by the Neelys.

217 S.W.—69

The case was submitted upon special issues, and upon the findings made judgment was rendered in the Neelys' favor in the sum sued for.

## Opinion.

[1] It is the general rule of law that a contract must be at least substantially performed according to the terms of the agreement before a party can have any right of action thereon. Linch v. Paris, etc., 80 Tex. 23, 15 S. W. 208; 6 R. C. L. 951 and 966 et seq.

[2] A plaintiff cannot recover on an entire contract by proving part performance without allegations authorizing recovery upon a quantum meruit. Felton v. Talley, 31 Tex. Civ. App. 336, 72 S. W. 614; Riggs v. Horde, 25 Tex. Supp. 456, 78 Am. Dec. 584; Carroll v. Welch, 26 Tex. 147.

In other words, if plaintiff failed to comply substantially with his contract, his right of action, if any, is not upon the contract but upon a quantum meruit. Shrewsbury v. Ellis, 26 Tex. Civ. App. 406, 64 S. W. 700; Binz v. Supply Co., 105 S. W. 543.

Under the rules of law noticed and upon the undisputed evidence, the peremptory instruction requested by plaintiff in error should have been given, and its assignment of error complaining of the refusal of the instruction is sustained.

Recovery upon a quantum meruit was not sought. The contract declared upon is entire. In consideration of certain services to be performed by the Neelys, the company obligated itself to pay a lump sum, payable in installments. This contract imposed joint obligations upon the Neelys.

[3] The original contract (disregarding the supplementary agreement of May 16th) imposed upon the Neelys a joint obligation to farm, cultivate, and gather the crop of cotton in a thorough and farmerlike manner. This necessarily implies that they personally should supervise and superintend the operations, and this was a nondelegable duty. Indeed, the contract expressly stipulates that they should superintend the picking. Grover never did any work on the farm, and, if he was ever upon the place during the entire year, there is nothing in the evidence to so show.

It appears that the Neelys contracted with their father to do what they had assumed to do under the contract and agreed to pay him the sum of $1,550 for his services. Upon his direct examination, Erastus Neely testified that he superintended and supervised his father's work, but upon his cross-examination he admitted that he had delegated to his father supervision over operations. The following exceptions from his testimony show this to be true, viz.:

"I hired Mr. Stovall to superintend and do some work out there. I believe he was located at Pyote when I hired him. Papa saw Mr. Stovall and arranged for that; I made arrange-

ments with him to see him. I hired part of the other laborers on the farm and he hired part of them; he had some boys of his own; they done most of the work. I suppose he hired most of them. He done the personal work and I looked over him. Most of the time my father supervised and looked after the laborers, directed by me. I agreed to pay my father $1,550 for work on that farm. * * * I was spending most of my time in 1917 on the road backwards and forwards, in various businesses. I did some trading. I didn't trade much, but was trying to trade most of the time. I was going to Grand Falls, Balmorhea, up to the ranch to see different parties around. I also had farming industries that I had to look after —this contract with Mr. Barstow. I also looked after my ranch business up in Reeves county. I had a man up there. * * * "

W. H. Neely, father of defendants in error and a witness in their behalf, testified:

"I made this trade with Erastus Neely in the fall of 1916; not right away after the contract was made with Mr. Barstow, but before the beginning of the year 1917. I haven't any contract with Erastus Neely, more than a verbal arrangement. For the $1,550 I was to go ahead, do what work I could towards it. What I could not do I was to have done; otherwise to fulfill the contract. I had teams of my own. I was to furnish teams. What help I did not have I was to get them. I was to pay the help out of the $1,550. I was to pay for what I had done. * * * I attended to hiring most of the labor that was done; that was my business to do that, as I was furnishing the teams. I was to supervise generally this labor, because they was my men while I was working them. They took their orders from me. I showed them how to farm the land. My daughter superintended the weighing of the most of the cotton. One of the boys weighed some of it. No, I never told Mr. Barstow anything about my contract with Mr. Neely. Erastus Neely was certainly my boss under this arrangement. I had to do whatever he said. Yes, he is my son. He had the contract. Naturally we counseled together, and done what he said do. * * * "

Upon the facts stated, it clearly appears that the defendants in error failed to perform personal obligations resting upon both of them, and they cannot recover upon the contract.

It is unnecessary to pass upon the other assignments.

Reversed and remanded.