## DEAL v. CRAVEN. (No. 8522.) *

(Court of Civil Appeals of Texas. Galveston. June 19, 1924. Two Motions for Rehearing Denied Nov. 20, 1924.)

I. Work and labor ⊂═⊃12—Contractor who has substantially complied with contract not limited to quantum meruit.

Contractor whose .work was in substantial but not in full and complete compliance with contract may recover contract price less reasonable deductions necessary to supply deficiencies, and is not limited to quantum meruit.

2. Contracts ⊂═⊃206—Contractor allowed deductions in action against him by subcontractor held not entitled to attorney's fee under provision of contract.

In action by subcontractor, who had substantially performed contract, against principal contractor, in which cost of completing contract was deducted from contract price claimed due contractor who had refused to pay such amount unless subcontractor allowed him not only amount so deducted but also further claims, to which court and jury found he was not rightfully entitled, was not by reason of deductions so allowed entitled to attorney's fee under provision of contract entitling him thereto, if it became "necessary for the contractor to enforce the collection of any sum of money under this contract."

Appeal from District Court, Harris County; J. D. Harvey, Judge.

Suit by Cliff Deal against M. M. Craven. From judgment rendered, both parties appeal. Reformed and affirmed.

C. H. Chernosky and Stevens & Stevens, all of Houston, for appellant.

Bryan Dyess & Colgin, of Houston, for appellee.

GRAVES, J. M. M. Craven had a contract with Fort Bend county for the construction of 13 miles of public road, and on July 27, 1920, he sublet 5 miles of such construction, except as to the culvert and bridge work thereon, to Cliff Deal under the following written contract between them:

"The State of Texas, County of Fort Bend.
"This agreement, made and entered into by and between M. M. Craven, of Harris county, Tex., hereinafter termed the contractor and Cliff Deal, of Wharton county, Tex., hereinafter termed subcontractor, witnesseth:

"That, whereas the contractor has heretofore entered into a contract with the duly authorized officials of Fort Bend county, Tex., to do certain road work for the county, and contractor ·and subcontractor has agreed to subcontracting some of such work upon the hereinafter set out terms and conditions, but it being distinctly understood and agreed that the work to be done shall comply with the terms and specifications of the original contract, and this contract is made subject to such original terms and conditions of the original contract.

"The work to be performed hereunder is to be a dirt road in Fort Bend county, beginning at a point about one —— west of town of Rosenberg in said county, and terminating at a point 5 miles west from the starting point as per the plans covering said road, said· road is known as Highway No. ——.

"The work to be done hereunder is to be in strict compliance with the original contract between contractor and the county, to be done in a good workmanship manner, and to be subject to the inspection, approval, and acceptance of the county engineer of Fort Bend county, whose decision on all questions arising out of the performance of such work to be binding upon the parties hereto.

"The subcontractor agrees to finish the entire work contracted for herein within a period of one hundred and twenty-five (125) working days from the 27th day of July, 1920, and all of the dirt work shall be at the price of twenty-seven (27) cents per cubic yard for straight hauls, overhaul shall be paid at the price of 3½ cents per cubic yard.

"The subcontractor further agrees to do all. work on out fall ditches that might come within the points covered by this contract at the price of twenty-seven (27) cents per cubic yard.

"Payments shall be made upon monthly estimates furnished on such work by the engineer to the contractor; less 10 per cent. of the work accepted by the engineer; which 10 per cent. is to be withheld by the contractor and paid to the subcontractor when subcontract has been completed, inspected, approved, and accepted by the county engineer.

"Should the subcontractor, through default on his part, fail to complete the work herein contracted for within the time prescribed so as to be finally accepted by the engineer of Fort Bend county, and if through such failure the contractor should be penalized under his contract with the county of Fort Bend, then in such event the subcontractor agrees to reimburse the contractor for any sum of money he has to rightfully pay to the county of Fort Bend, and, should the subcontractor, after starting the work contracted for, refuse to carry on the work, then all money withheld by the contractor for him on the estimates shall be forfeited by the subcontractor as liquidated damages to the contractor. However, this provision does not deny to the contractor the right to elect to sue for any damages such breach may cause him. And subcontractor agrees, should it become· necessary for the contractor to enforce the collection of any sum of money under this contract, to pay all necessary expenses, including a reasonable attorney's fee for the enforcement of such claim or claims.

---

⊂═⊃For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes
*Writ of error granted January 28, 1925.

"In witness whereof the parties hereto have signed their names in duplicate originals on this the 27th day of July, 1920.

               "M. M. Craven.
               "Cliff Deal."

In this suit Deal as plaintiff sued Craven as defendant, alleging that he had constructed the 5 miles of the road so undertaken by him in at least substantial compliance with the requirements of the quoted contract; that he had done under it work of the total value of $17,592.83, consisting of "14,355 cubic yards of outfall ditch excavation within points covered by said contract at 27 cents per cubic yard aggregating the sum of $3,875.85, 50,502 cubic yards of borrow and roadway excavation at 27 cents per cubic yard, aggregating the sum of $13,635.54, 2,327 cubic yards of overhaul at 3½ cents per cubic yard, aggregating the sum of $81.44, the total amount of and for the work done by plaintiff for defendant under the terms of said contract, $17,592.83"; that he had received from Craven $14,597.45, and that there was due him under the contract a balance of $2,995.43, for which sum he asked for a judgment against the defendant.

Craven answered the suit, denying that Deal had complied either with their subcontract or with the terms of the contract between Craven and Fort Bend county, or with the plans and specifications he had undertaken to work by. He then alleged that Deal had, on January 8, 1921, abandoned the work in an incomplete condition, and that he himself, defendant, Craven, had been required by the county engineer of the county to go back on the road and complete it, and after doing that, to maintain it until it had been finally accepted by the county engineer, and that he had done this at a total cost to him of $3,892.39, and that, after allowing the plaintiff, Deal, a credit of what he would have been entitled to had he performed this work under their contract, a total of $2,800.72, which included $1,618.80 as 10 per cent retained by Craven on the work actually done by Deal up to the time he abandoned the undertaking there was left a balance of $1,091.61 in defendant's favor, for which he asked judgment against plaintiff, Deal, by way of counterclaim; also praying for $500 attorney's fees which he claimed under the section of the subcontract providing that, should it become necessary for Craven to enforce the collection of any sum of money thereunder, Deal would pay all necessary expenses, including reasonable attorney's fees for the enforcement of such claim.

In a supplementary pleading in reply to the defendant's cross-action the plaintiff denied that he had abandoned the work before completion, and alleged that the county engineer had accepted his work as a full and complete performance of the contract upon his part; that after so completing the work within 125 working days from the 27th of July, 1920, the county engineer had inspected, approved, and accepted the same as a final compliance with his undertaking, and he had then moved his equipment to another place; that thereafter other persons, to whom the defendant had sublet the construction of the culverts and bridges on the same, tore up the embankments plaintiff had built thereon and filled up the ditches he had made, and left the same standing for several months in that condition, as a result of which the conditions complained about by defendant had arisen, and that plaintiff was not responsible therefor; that after the county engineer had so accepted the work done by him he had declined to go back on the road and remedy the conditions so brought about by the other subcontractors who did the culvert and bridge work thereon; that both parties were bound by the action of the county engineer, and that defendant was estopped to claim anything further from plaintiff by reason of any additional work he may have done upon the road.

The cause was submitted to a jury upon special issues, which, together with the jury's answers thereto, were as follows:

"No. 1. Was the road subcontracted to Cliff Deal constructed by him in substantial compliance with all of the terms of the plans and specifications? Yes.

"No. 2. Did Leon R. Gurley, the engineer, finally accept as complete from plaintiff, Cliff Deal, the construction work which said Deal had contracted to do on the 5-mile stretch of road in controversy? Yes.

"No. 3. What is the total contract price of the total amount of construction work done by Cliff Deal up to January 8, 1921, under his contract? $17,397.04.

"No. 4. What was the reasonable cost of the work, if any, done by M. M. Craven on the part of said 5-mile stretch of road covered by the Cliff Deal contract, after the same had been left by Cliff Deal, in order to meet the requirements of the terms and provisions of the original contract with the county? $1,163.64.

"No. 5. What is a reasonable fee to be allowed in this case to M. M. Craven in payment for the services of his attorneys in prosecuting his cross-action? $500."

On the coming in of this verdict the court entered judgment in favor of plaintiff Deal for $1,047.83, with 6 per cent. interest from February 1, 1921, arrived at by taking from the $17,397.04 found by the jury to have been the total price on all the work done by plaintiff up to January 8, 1921, three items, to wit, $14,688.58 received by plaintiff up to that date; $1,160.63 found by the jury to have been the reasonable cost of the work Craven did on the road in order to meet the requirements of his original contract with the county after it had been left by plaintiff Deal; and the further sum of $500 found as attorney's fee in favor of Craven. At the same time it was adjudged that defendant,

Craven, take nothing by his cross-action against the plaintiff. From this judgment so rendered both parties have appealed.

It is apparent from the terms of this judgment that the trial court entered it upon the general conclusion, drawn from the verdict and independently from the evidence, that appellant Deal was entitled, as for a substantial compliance with his undertakings thereunder, to the contract price of the road, less the reasonable cost to appellee, Craven, of the work he did thereon to meet the requirements of his original contract with the county after appellant had left the work.

The substance of appellant's contention on appeal is that, since the jury on sufficient evidence found not only that he had substantially complied with the terms of his contract, but also that the county engineer had finally accepted his work as complete, he was entitled to the full contract price without deduction on any account, while that of appellee is that appellant's recovery, if any at all, should only have been upon a quantum meruit basis for the work actually done by him, since he was shown to have failed to even substantially carry out his contract. After a careful consideration of the cause, we are not prepared to hold the court's determination erroneous, except in allowing the attorney's fee.

[1] Under the view we take of the controversy it is deemed unnecessary to go into a discussion of the relative bearing and effect upon each other of the various provisions of the two contracts involved. It must be conceded, we think, as appellant argues, that there was sufficient evidence to sustain the jury's finding that his work was in substantial compliance with his contract and was so accepted by the county engineer, but still he would not be entitled to the judgment he seeks, because it was further indisputably, if not admittedly shown that there was not full or complete compliance. In such circumstances, under well-settled authority, the contractor is not limited to a quantum meruit, but may recover the contract price, less such reasonable deductions as may be necessary to supply the deficiencies. Harrop v. Nat. Loan, etc., Co. (Tex. Civ. App.) 204 S. W. 878; Bradford v. Whitcomb, 11 Tex. Civ. App. 221, 32 S. W. 571; Bowen v. Kimbell, 203 Mass. 364, 89 N. E. 542, 133 Am. St. Rep. 302; Spence v. Ham, 163 N. Y. 220, 57 N. E. 412, 51 L. R. A. 238; Enterprise Co. v. Neely (Tex. Civ. App.) 217 S. W. 1088.

In this instance, the reasonable cost of such defects and omissions, irrespective of the much disputed question as to which party should keep the 5-mile stretch in condition until the whole 13 miles had been finally completed, was just what the jury found in the $1,163.64 item, since appellant, Deal, bound himself in the work he undertook to meet as to it the requirements of Craven's original contract with Fort Bend county. There is no other deduction, except the attorney's fee, which was specially contracted for.

If, therefore, the evidence sufficiently supported the jury's finding of this full completion cost, the rule applied in the cited cases is applicable. After going into the statement of facts, we have no doubt that it was sufficient. The precise figures thus returned may not have been stated by the witnesses for either side, as the appellee urges, but there was a great deal of testimony on the subject, much of it dealing in estimates only, and upon the whole matter the jury were entitled to apply their common sense to the details before them, and to reconcile the divergencies in arriving at the figures they fixed.

[2] As concerns the allowance for attorney's fee, we think, without reference to questions raised concerning the pleading and proof of it, that the evidence fails to bring appellee's claim for it within the terms of the contract between the parties; the stipulation affecting the matter, "and subcontractor agrees, should it become necessary for the contractor to enforce the collection of any sum of money under this contract, to pay all necessary expense, including a reasonable attorney's fee for the enforcement of such claim or claims," evidently meant to impose the obligation upon appellant to relieve appellee only of such expense as was necessary in enforcing the collection of any money rightfully due the latter, and not to afford him a club with which to exact additional sums and bind appellant to pay for the means employed. The net effect of the testimony is that, although appellee had in his hands money admittedly due appellant, he declined both before and throughout the progress of this suit to pay him anything, unless and until appellant allowed him, not only the amount the jury found it cost Craven to complete the road after Deal left, but also further claims totaling some $2,800, which court and jury found he was not rightfully entitled to. He thus compelled appellant to sue to get anything, and the fact that in doing so the latter likewise sought more than he should have does not affect the matter. The result still is that appellee has not shown that it was necessary for him "to enforce the collection of any sum of money under this contract" justly due him, since the undisputed evidence shows that he never at any time tendered or offered to pay the contract price for the work, less only the reasonable cost to him of completing it so as to conform to the county's requirements, but always insisted on a total damage claim of over $3,800.

It follows from these conclusions that all other contentions of both parties should be overruled except the complaint of appellant against the attorney's fee. The trial court's judgment has therefore been so reformed as to eliminate the allowance to appellee of

the $500 attorney's fee. and, after being so reformed, has in all other respects been affirmed.

By some inadvertence the entry made on the trial docket in announcing this decision was "affirmed," when it should have been "reformed and affirmed."

Reformed and affirmed.