### MARKHAM IRR. CO. v. BROWN.* (No. 8674.)

(Court of Civil Appeals of Texas. Galveston. June 16, 1926. Both Rehearings Denied July 1, 1926.)

1. **Waters and water courses ☞257(1)—Irrigation company held not entitled to recover from customer quantum meruit, where it did not plead value of partial performance, but sued for stipulated rental.**

Irrigation company, which was prevented from supplying water after July 20. by water shortage, cannot recover from customer, either on contract or quantum meruit, for percentage of crop which was matured with water from another source, though it loaned pump to customer, and sold him fuel to operate it and get the other water, where it did not plead or prove partial performance, but sued for stipulated rental.

2. **Waters and water courses ☞263—Irrigation company's customer held not entitled to damages for crop loss under evidence failing to show loss due to discrimination (Rev. St. art. 7557).**

Customer of irrigation company, whose crop was total loss because of lack of water, held not entitled to damages, though company discriminated against him, contrary to Rev. St. 1925, art. 7557, after water shortage occurred, where evidence did not show what part of loss was due to such discrimination.

3. **Waters and water courses ☞257(1).**

Irrigation company's action for water rental and customer's cross-action for loss of crop because of failure of water supply held distinct, requiring individual proof.

4. **Waters and water courses ☞254.**

Irrigation company's failure to furnish water at critical stage of rice crop held breach of its contract, without formal declaration by customer.

5. **Waters and water courses ☞263.**

Where irrigation company failed to prorate water among customers during shortage, as required by Rev. St. 1925, art. 7557, customer's measure of damage is that part of loss which proximately flowed from failure.

Error from District Court, Matagorda County; M. S. Munson, Judge.

Action by the Markham Irrigation Company against Sig Brown, in which defendant filed cross-action. From a judgment adverse to plaintiff on its claim, and adverse to defendant in his cross-action, both parties bring error. Affirmed.

John W. Gaines, of San Antonio, and C. R. Wharton, and S. H. German, both of Houston, for plaintiff in error.

Styles, Krause & Erickson, of Bay City, and Kelley & Hawes, of Wharton, for defendant in error.

GRAVES, J. The parties to this controversy, Markham Irrigation Company and Sig Brown, had a written contract of date January 2, 1917, under which, for a rental of one-fifth of all crops raised thereon, the former agreed to use its best efforts—subject to the rights of its other tenants and to the limitations in its contracts then in use with them—to furnish sufficient water for the irrigation of the latter's rice land for a period of five years, inclusive of 1917. Brown planted 490 acres in rice for the year 1917, and the company furnished sufficient water to properly irrigate it up to about July 15, 1917, when its pumps were shut off and it furnished no more at all. Thereupon Brown procured water from other sources and succeeded in raising 2,023 sacks of rice for that year on 180 acres, but lost entirely the crop so planted on the remaining 310 acres. Then the irrigation company sued Brown for the value of one-fifth of the 2,023 sacks, declaring upon this express contract between them, alleging compliance on its part with all its obligations thereunder, and that by reason of the water furnished by it in accordance with the terms thereof Brown had raised the rice, wherefore it was entitled to the one-fifth part thereof as rental.

The defendant answered by way of general denial, also alleging that he put in 490 acres of rice, but that plaintiff, without just cause, breached its contract and refused to furnish

---

☞For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes
*Writ of error granted November 10, 1926.

him water after July 20, 1917, and diverted all the water to other tenants, who were no more entitled to the same than he; that, being unable to induce plaintiff to furnish any water, he, in order to save as much of his rice crop as possible, constructed a dam across a drainage ditch carrying waste water from land irrigated by another irrigation company, and built a pumping plant thereon, thereby saving about 180 acres of his rice crop, and that the remainder of 310 acres was wholly lost, solely by reason of plaintiff's failure and refusal to furnish the necessary water to irrigate the same. He further, by way of cross-action, asked damages for the rice lost on the 310 acres because of this alleged failure on the part of plaintiff to furnish water therefor, placing his damages at $22,275, the value of the rice he would have raised on the 310 acres, after deducting expenses of planting, cultivating, and harvesting same, if plaintiff had furnished sufficient water for irrigating it. He made no claim for damages for failure to water the crop on the 180 acres, which he averred was saved by his own efforts in obtaining water from the drainage ditch, and not from plaintiff's irrigation system, in consequence of which he prayed that plaintiff take nothing on its claim.

By further pleadings, the plaintiff reiterated, the averments before made, denied that it had either refused to furnish the defendant any or diverted the water to its other tenants, and charged the fact to be that it had performed all of the conditions of its contract, in so far as it was possible to do so, and that, if it had failed to furnish sufficient water for defendant's rice crop, such failure was due to an unprecedented drought during the year 1917, which caused the Colorado river and other sources of water to dry up, and prevented it from obtaining water for the need of its tenants. By supplemental answer, the defendant Brown presented a general denial, and prayed as formerly. Pending the trial, plaintiff took possession of one-fifth of the 2,023 sacks of rice, the agreed value of which was $4,000, and gave a bond agreeing to pay defendant that sum, should it be cast on its claim, or he recover that much against it on cross-action.

At the close of all the evidence the trial court instructed a verdict against the plaintiff's claim for any interest in the value of the rice raised on the 180 acres, against defendant Brown's claim on cross-action for damages for loss of the crop on the 310 acres, and in favor of Brown against the plaintiff and the sureties on its bond, who were parties and had answered, for $4000. On the return of such a verdict, judgment conformable thereto duly followed. This writ of error proceeds from that action below.

[1, 2] Upon appeal both litigants—the irrigation company as plaintiff in error, and Brown as defendant in error, by way of cross-assignment—complain of the instruction below against their separate claims so sued upon, while at the same time each insists that the cutting out of the other's demand against him should be upheld. After a careful review of the record and the very able arguments—oral as well as written—for both sides, we conclude that so much of the contentions of both as challenge the correctness of the trial court's action should be overruled, and its judgment affirmed, mainly upon these considerations:

(1) The irrigation company, having declared upon full, or at least substantial, performance of its written contract, and neither having pleaded nor proved the value of any partial performance thereof, under the undisputed evidence, failed to meet the burden of proof upon it to recover the value of any interest in the 2,023 sacks of rice.

(2) A like state of the evidence shows that about July 15, 1917, due to the unusual drought then prevailing, a shortage of water occurred, and thereafter—at a time when Brown's rice crop, though then good, had reached a critical condition because of its stage of approach toward maturity—the irrigation company failed to use such care and diligence to irrigate Brown's crop as it could have exercised, there then being further water available to it, but discriminated against him by distributing all such available water to others, thereby violating its duty under R. S. art. 7557.

(3) The uncontroverted evidence showed that the irrigation company furnished Brown no water at all subsequent to about July 15 (or at latest July 20), 1917, and that in consequence, while in good condition up to that time and approaching maturity, his rice on the entire 490 acres would have been (and 310 acres of it actually was) a total loss, but for his thereafter procuring water from other sources sufficient to mature the 180 acres thereof, on which the 2,023 sacks of rice in suit were raised.

(4) Under the evidence as a whole, there was no such proof as would have properly enabled the court to fix the damages the defendant in error sustained from the entire loss of a crop on the 310 acres, as a result of the irrigation company's failure to legally prorate, and so give Brown his share of, the water it had after the shortage occurred.

[3] (5) The defendant in error sought no set-off in damages against the irrigation company's claim for one-fifth the returns from the 180 acres, but only denied that it was entitled to any interest therein, showing by uncontested proof in that connection that the rice he raised on that part of the land was not made with water furnished by it, but from that he himself obtained by constructing a pumping plant on a drainage ditch, thereby utilizing water that came from another irrigation company.

Plaintiff in error erroneously construes its opponent's pleadings as meaning that he

sought to set off against its claim on the rice raised on the 180 acres his alleged damages flowing from its failure to fully perform the contract, and on that assumption, under the further statement that he not only did not repudiate the contract on that account, but on July 20, 1917, accepted as part performance the rice that had then—as a result of its duly supplying water—been brought almost to maturity, bases its contention through several propositions that defendant in error should have been remitted solely to his claim for damages, and, since the the trial court held him not entitled to any, judgment should have gone in its favor for the one-fifth interest it claimed.

We think the position unsound. As our statement and numbered conclusions have indicated, there was no such set-off. Defendant in error met the declared upon cause of action for full or even substantial performance with a general denial; then, becoming an actor on his own part, by entirely independent counterclaim, he charged that the plaintiff in error owed him $23,291 for failure to water the 310 acres, upon which he made no crop at all, limiting the claim to that acreage alone.

Under his denial that it had performed its contractual obligations as to any part of the crop, especially the 180 acres, he proved without controversion that it completely and finally left him, about July 20, 1917, with an inchoate crop—worthless without further water—on his hands, furnishing him no water thereafter, and that, if he had not procured it elsewhere, he would have raised none of the 2,023 sacks. It was therefore a Hobson's choice the irrigation company left him on that date, and the rules of law it invokes as to the binding effect of accepting benefits from part performance of a contract, and not repudiating it because of failure to fully perform, do not apply.

Neither do we see any interdependence between the suit on the one hand to recover rental upon an entire express contract as under full performance, and that upon the other to recover by way of cross-action specified damages in lost crops for an alleged breach of that contract. The two were separate and distinct causes of action, and the refusal of the one did not perforce require the granting of the other.

In any event, moreover, the part performance rule would be a mere abstraction here, for the previously cited reason that plaintiff in error neither pleaded nor proved the value of any service less than the expressly stipulated rental for entire compliance with its undertaking; hence was not entitled to recover upon a quantum meruit. Nor did the defendant in error's having gone out into the by-ways for water, on development of the emergency its remissness had brought upon him, in the effort to minimize his loss, lend it any aid in its suit to recover against him on the contract. It could recover only upon the strength of its own cause of action, and not upon any weakness in a cross-action brought by its adversary.

It may be that it was defendant in error's bounden duty to so minimize as a condition precedent to his right, in turn, to recover upon his damage claim in comeback, but, if so, that neither sustained any relation to nor helped the plaintiff in error any in the establishment of its independent demand for a stipulated rental in return for an agreed service to be performed; plainly it had to individually show that it rendered that service. The authorities cited by plaintiff in error as bearing upon Brown's duty to lessen his damages consequent upon a breach of the contract, and upon the measure thereof, have therefore no relevancy to its own right to recover for an alleged performance of it—the two actions being dissimilar and ruled by different legal principles.

[4] Under the undisputed facts as we have found them, Brown did not waive or condone a breach of the contract as a whole by the irrigation company, and in lieu accept the benefits of a partial performance, as is so ably argued for the company here, but, upon the contrary, had the merely potential crop at perhaps its most critical stage thrust upon him by its failure and refusal to furnish him any more water. That action constitutes a definite breach of the contract, and it would not seem to have been incumbent upon Brown to formally declare it. He simply accepted the fact at the time, and went about to avert its effects as far as he could.

Our conclusions that the two causes of action so declared upon by the litigants were separate and distinct, requiring individual proof for each, and that the plaintiff in error could neither recover the rental under the contract nor upon a quantum meruit for the water actually furnished, even though defendant in error did get some benefit from it, because the undisputed evidence showed only a partial performance and no count upon or proof of the value of that service, seem to us to be in substance and effect supported by the holdings of our own courts in these cases: City of Sherman v. Connor et al., 88 Tex. 35, 29 S. W. 1053; Childress v. Smith, 90 Tex. 610 and 616, 38 S. W. 518, 40 S. W. 389; O'Connor v. Van Homme, Dallam's Dig. 429; Atkinson v. Jackson Bros. (Tex. Com. App.) 270 S. W. 848, Syl. 6, 38 A. L. R. 1377; Thames v. Clesi (Tex. Civ. App.) 208 S. W. 195; Enterprise Co. v. Neely (Tex. Civ. App.) 217 S. W. 1088; Nystel v. Gully (Tex. Civ. App.) 257 S. W. on page 288, Syls. 7, 8, and 9; Beckham v. Scott (Tex. Civ. App.) 204 S. W. 137. If those from other jurisdictions, cited and relied upon by plaintiff in error, uphold contrary views, we prefer following our own.

As affects the original appeal, there but remain for comment two features: The irrigation company's claim to having continued

after July 20, 1917, to do all it could to help mature Brown's rice crop by furnishing him fuel oil and a pump to get water out of the drainage ditch with, and the latter's counter-charge that it had no other than a lender's or seller's connection with those equipments, and wrongfully discriminated against him in the distribution of water subsequent to that date. While the determinations already made dispose adversely to the company of the first of these matters, it may be added that it only pleaded these efforts as being a voluntary assistance on its part, not as the discharge of any legal obligations, and we think it further conclusively appears from the testimony that Brown himself installed and operated his pumping plant at his own expense; the only aid rendered him in so doing by the irrigation company being that it loaned him the pump and sold him some of the fuel oil used in operating it. In this respect the case at bar seems not unlike those of Houston River Canal Co. v. Kopke, 106 La. 609, 31 So. 156, and Landers v. Canal Co., 52 La. Ann. 1465, 27 So. 727, where the Louisiana courts held that the rendition of such services by the canal companies neither constituted a fulfillment of their contracts as a whole nor entitled them to a pro tanto recovery for partial compliance.

The material state of the record affecting the discrimination issue is this: By mutual concession of the parties, a shortage of water became apparent some days before and actually occurred about July 15, 1917. Brown's land lay on the company's relift canal, which made necessary the operation of a relift pump to get water to it, the one so used being called the northern plant, and a second one the company operated below being termed the Markham plant. Mr. Brown got his last water from the company for about eight hours on July 14, and the next day this relift pump that supplied him was closed down, and not started again that season. A few days thereafter, however—that is, by or before July 20—the company by purchase obtained a supply of water from the dam at Austin, Tex., that enabled it to pump for nine days or more longer, from about July 20 to 29, but diverted all of this water lower down its canals than Mr. Brown's land, and distributed it to others of its patrons, giving Mr. Brown none of it at all. The shortage was then acute and the time critical for all the company's customers.

On occurrence of this shortage, we think the provisions of R. S. art. 7557, ipso facto, became as much a part of the irrigation contract as if the parties by an addendum of that date had expressly incorporated them in it, since they sustained at the time such relation to each other as brought them within its purview, that of customer and public service corporation. The terms of the statute are as follows:

*"Division in Case of Shortage.—*In case of shortage of water from drought, accident or other cause, all waters to be distributed shall be divided among all customers pro rata, according to the amount he or they may be entitled to, to the end that all shall suffer alike, and preference be given none."

The facts just detailed constitute, we think, a discrimination within the meaning of this act, and furnish further proof that plaintiff in error failed to use its best efforts—that is, such care and diligence as it could command and exercise (Colorado Canal Co. v. McFarland [Tex. Civ. App.] 94 S. W. 403, Syl. 5)—to supply Brown with sufficient water to properly irrigate his crop.

[5] The cross-appeal, too, must fail, for the reason given generally in our fourth stated conclusion. As we view the record, defendant in error could only recover such damages for the loss of a crop on the 310 acres as proximately flowed from the irrigation company's failure to legally prorate the water it got from the Austin dam, and the evidence furnishes no criterion from which the amount thereof could be determined. It is not shown just how much water was so available, whether all or only a part of this acreage could have been so irrigated, nor whether its application during the nine days it was being distributed would have been sufficient for bringing a crop to maturity, and, if so, how much. Obviously, this state of the evidence left the court in no position to fix the amount of any recovery on the claim.

The assignments of both parties have been overruled, and an affirmance ordered.

Affirmed.